720 So.2d 203 (1998)
Edward Eugene RAGSDALE, Appellant,
v.
STATE of Florida, Appellee.
No. 89657.
Supreme Court of Florida.
October 15, 1998.
*204 Todd G. Scher, Chief Assistant CCR, Office of the Capital Collateral Representative, Southern Region, Miami, and Jennifer M. Corey, Assistant CCR, Office of the Capital Collateral Representative, Middle Region, Tampa, for Appellant.
Robert A. Butterworth, Attorney General, and Carol M. Dittmar, Assistant Attorney General, Tampa, for Appellee.
PER CURIAM.
Edward Eugene Ragsdale appeals the trial court's order denying his motion to vacate judgment and sentence filed pursuant to Florida Rule of Criminal Procedure 3.850. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. For the reasons expressed, we affirm in part and reverse in part the order denying relief.
In 1986, Edward Eugene Ragsdale and Leon Illig were arrested for the armed robbery and first-degree murder of Ernest Mace (the victim). The victim had been badly beaten and his throat had been slit. Illig pleaded nolo contendere and received a sentence of life imprisonment. Illig invoked the Fifth Amendment when called to testify at Ragsdale's trial. Ragsdale admitted striking the victim and cutting him with a knife but asserted that Illig inflicted the fatal cut. Three individuals testified at trial that Ragsdale admitted he had committed the murder.
Ragsdale was convicted as charged and the jury recommended death by an eight-to-four vote. The trial judge followed that recommendation, finding no factors in mitigation and three factors in aggravation: (1) that the murder was committed while Ragsdale was on parole (under sentence of imprisonment); (2) that the murder was committed during a robbery and for monetary gain; and (3) that the murder was especially heinous, atrocious, and cruel. The facts of the crimes are set forth in more detail in Ragsdale v. State, 609 So.2d 10 (Fla.1992).
After our opinion in Ragsdale, a dispute arose between Ragsdale and the state attorney regarding Ragsdale's public records request. The state attorney provided Ragsdale with certain records but claimed exemptions as to others. After reviewing the materials in camera, the trial judge denied Ragsdale's request for the remaining documents in a one-paragraph order.
After a hearing before the trial court on the issue of whether Ragsdale was entitled to an evidentiary hearing on any of the issues raised in the 3.850 motion, the trial judge denied the motion without an evidentiary hearing. After the trial judge entered the order denying relief, Ragsdale moved to disqualify the judge based on the judge's allegedly biased comments in the order. The motion was denied.
This appeal followed, in which Ragsdale raises a total of twenty-one claims.[1] We *205 conclude that the majority of these claims were properly denied as being either procedurally barred or clearly without merit.[2] The following claims merit discussion.
First, Ragsdale argues that he has been denied access to public records. During the course of its investigation in this case, the State obtained documents from other agencies.[3] When Ragsdale filed his public records request, the State claimed a number of exemptions regarding those documents as well as for notes and drafts of its own. After Ragsdale filed a motion to compel regarding these documents, the trial judge held a hearing regarding the status of the records request and conducted an in camera review of the contested records. The judge determined that all records had properly been withheld. Ragsdale argues that the trial judge erred in refusing to order the State to provide Ragsdale with access to these records because the State had no standing to raise these exemptions on behalf of the other agencies and was inappropriately withholding documents of its own. According to Ragsdale, only those agencies who acted as custodian of the records had standing to assert the exemptions; that is, once the records came into the hands of the State the exemptions no longer applied to those records. As such, Ragsdale contends that the trial judge erred in denying this claim without an evidentiary hearing.
We first note our recent holding in Johnson v. Butterworth, 713 So.2d 985 (Fla. 1998), in which we stated that attorney's notes and other such preliminary documents are not public records and are never subject to public records disclosure. Id. at 987. Based on that conclusion, we find the trial judge correctly found that the notes and drafts prepared for the State's use in litigating this case are not public records.
As to the standing argument, we conclude that the applicability of a particular exemption is determined by the document being withheld, not by the identity of the agency possessing the record. In City of Riviera Beach v. Barfield, 642 So.2d 1135, 1137 (Fla. 4th DCA 1994), documents were given by one agency to another during an active criminal investigation. In seeking access *206 to those records, the petitioner made the same argument as that made here, i.e., that the transfer of a document from one agency to another nullifies the exempt status of the record. In rejecting this argument, the Barfield court stated:
We conclude that when a criminal justice agency transfers protected information to another criminal justice agency, the information retains its exempt status. We believe that such a conclusion fosters the underlying purpose of section 119.07(3)(d), which is to prevent premature public disclosure of criminal investigative information since disclosure could impede an ongoing investigation or allow a suspect to avoid apprehension or escape detection. In determining whether or not to compel disclosure of active criminal investigative or intelligence information, the primary focus must be on the statutory classification of the information sought rather than upon in whose hands the information rests. Had the legislature intended the exemption for active criminal investigative information to evaporate upon the sharing of that information with another criminal justice agency, it would have expressly provided so in the statute.
642 So.2d at 1137 (second emphasis added) (citation omitted). Although the information sought in this case is not information currently being used in an active criminal investigation, the rationale is the same; that is, that the focus in determining whether a document has lost its status as a public record must be on the policy behind the exemption and not on the simple fact that the information has changed agency hands. Thus, if the State has access to information that is exempt from public records disclosure due to confidentiality or other public policy concerns, that information does not lose its exempt status simply because it was provided to the State during the course of its criminal investigation.
This does not mean, however, that exculpatory information is not obtainable by a defendant when a record is not public. To the contrary, as we noted in Johnson, the State must still disclose a document to a defendant if it contains exculpatory information. Johnson; Brady v. Maryland, 373 U.S. 83, 87-88, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
In this case, a close question existed as to whether some of the claimed exemptions were correctly claimed by the State. Consequently, the trial judge reviewed the information in camera and then denied Ragsdale's motion to compel after determining that no exculpatory information was contained therein. Nevertheless, Ragsdale asserts that the trial judge failed to conduct a proper hearing as required by Walton v. Dugger, 634 So.2d 1059 (Fla.1993). The issue in Walton was whether a public records dispute was cognizable in a Florida Rule of Criminal Procedure 3.850 motion. In concluding that such an issue was properly raised in a rule 3.850 motion, we stated that the appropriate course of action was for the trial judge to have conducted a hearing regarding disclosure objections and, where doubt existed as to whether a particular document must be disclosed, to have conducted an in camera review of that document. The judge in this case complied with all of those requirements.
Ragsdale asserts that the trial judge's in camera review was insufficient because the trial judge merely "perused" the materials.[4] *207 After having reviewed the materials, we agree that the motion was properly denied.
Next, Ragsdale asserts that the trial judge should have recused himself in this case because, in the order denying rule 3.850 relief, the trial judge stated that certain claims were "bogus" and "a sham," and labeled a cumulative error claim as "nothing but abject whining." Ragsdale contends recusal is warranted because these comments reflect that the trial judge is biased and prejudiced against him and his counsel.
A review of the trial judge's order reflects that the trial judge carefully set forth his reasons for denying each claim. On seven of the twenty-three claims the judge evaluated, he set forth the reasons why the claim was without merit and then stated that the "claim is bogus and a sham and is hereby denied." On the cumulative error claim, he stated: "The defendant claims that the cumulative effect of the trial court and counsel's errors require post-conviction relief. This claim is vague, fails to state a basis for relief and is nothing but abject whining. The claim is hereby denied." When reading these comments in context, it becomes clear that the trial judge was simply stating that these particular claims were, in his opinion, not only without merit but frivolous as well. Additionally, the remarks regarding the cumulative error claim were made in conjunction with the judge's finding that the claim was vague and failed to state a basis for relief. We cannot say, on this record, that the trial judge's remarks warrant recusal. We strongly caution, however, that judges must refrain from making comments that might cause a litigant to fear that the neutrality to which the litigant is entitled has been compromised. The comment that a claim is nothing more than "abject whining" is unnecessary and does nothing to further the interests of justice even if it constitutes nothing more than a coarse way of stating that a claim is without merit and is frivolous.
In his next two claims, Ragsdale contends that he was deprived of an adversarial testing in the guilt and penalty phases of his trial. As to the guilt phase, he asserts a number of issues to support this claim, contending that the State withheld Brady material by failing to produce photographs relating to blood testing on Illig's clothing; that newly discovered evidence reflects that a State's witness gave false testimony due to pressure from the State; and that counsel's lack of preparation, failure to investigate, failure to present an involuntary intoxication defense, and failure to know the law affected the outcome of the proceedings. As to the penalty phase, Ragsdale asserts that counsel was ineffective in investigating and introducing evidence in mitigation.
We have encouraged trial courts to hold evidentiary hearings on postconviction motions. However, where the motion lacks sufficient factual allegations, or where alleged facts do not render the judgment vulnerable to collateral attack, the motion may be summarily denied. Steinhorst v. State, 498 So.2d 414 (Fla.1986). A hearing is warranted on an ineffective assistance of counsel claim only where a defendant alleges specific facts, not conclusively rebutted by the record, which demonstrate a deficiency in the performance that prejudiced the defendant. Cherry v. State, 659 So.2d 1069 (Fla.1995); Jackson v. Dugger, 633 So.2d 1051 (Fla.1993). A summary or conclusory allegation is insufficient to allow the trial court to examine the specific allegations against the record.
Applying this standard, we conclude that the trial judge properly denied an evidentiary hearing on the issues regarding the guilt phase. As to the asserted Brady violation, Ragsdale failed to assert that he could not have obtained the records himself through due diligence and he has not established how the outcome of this proceeding would have changed had such evidence been introduced. Hildwin v. Dugger, 654 So.2d 107, 109 (Fla.1995) (to establish Brady violation, defendant must show State possessed and suppressed favorable evidence not available to defendant through due diligence that, *208 if introduced, would have changed the outcome). In fact, the record reflects that Ragsdale obtained a court order for the disclosure of the evidence and never complained at trial that it had not been disclosed. Moreover, even if that evidence had been provided, it would have been cumulative to the information before the jury; that is, the jury was well aware that codefendant Illig had blood on his clothing.
Regarding the newly discovered evidence claim, Ragsdale has failed to identify the witness or the substance of the alleged false testimony. Further, three witnesses testified that Ragsdale confessed to them regarding the crime; thus the recantation of one witness would be insufficient to "probably produce an acquittal on retrial." Jones v. State, 591 So.2d 911, 915 (Fla.1991). Likewise, in setting forth his claim that defense counsel failed to adequately prepare, investigate, and know the law, Ragsdale has provided insufficient facts as to what would have been introduced or how the outcome would have been different had counsel acted otherwise.[5] Consequently, we find that the trial judge properly denied an evidentiary hearing on the claim that Ragsdale was denied an adversarial testing in the guilt phase of his trial.
With regard to the penalty phase, however, we conclude that an evidentiary hearing was required. During the penalty phase, defense counsel put on only one witness, Ragsdale's brother, who provided minimal evidence in mitigation. That witness had also testified on behalf of the State during the guilt phase. Additionally, the witness, when cross-examined by the State during the penalty phase, testified that it did not surprise him that his brother committed the murder and he provided other derogatory information about Ragsdale.
In Ragsdale's rule 3.850 motion, he states that testimony was available to show that Ragsdale's life was marked by poverty and deprivation and that he suffered from a lifetime of drug and alcohol addiction, yet no witnesses were called by the defense to present this testimony. More importantly, he contends that defense counsel never had him examined by a competent mental health expert for purposes of presenting mitigation. He asserts that he has now been examined by a mental health expert who has found that he suffers from organic brain damage; is mentally retarded; has severe language and listening comprehension difficulties; and has difficulties with concentration, attention, and mental flexibility. Additionally, he alleges the evidence will show that his ability to reason and exhibit appropriate judgment, as well as determine and assess the long-term consequences of his actions, is also substantially impaired.
In finding that an evidentiary hearing was unwarranted on this issue, the trial court concluded that this issue was without merit because the record reflected that a motion to appoint a mental health expert was filed and an order appointing such an expert was issued. According to Ragsdale, however, that expert was appointed solely for the purpose of determining competency to stand trial, and no expert was appointed to evaluate Ragsdale for the purposes of presenting mitigation.
We conclude that Ragsdale has stated sufficient allegations of mitigation that are not conclusively refuted by the record to warrant an evidentiary hearing to determine whether counsel was ineffective in failing to properly investigate and present this evidence in mitigation. Hildwin, 654 So.2d at 110 (failure of counsel to present testimony regarding substantial mitigating mental health evidence deprived defendant of reliable penalty phase proceeding).
In his fifth claim, Ragsdale argues that he was deprived of an effective mental health expert. This claim necessarily overlaps the foregoing claim that his counsel was ineffective in failing to investigate and introduce *209 evidence in mitigation and should also be considered at the evidentiary hearing.
Ragsdale also argues that the aggravating circumstance that the murder was committed while he was under a sentence of imprisonment was improper. According to Ragsdale, because of his mental condition, he did not have the ability to plead guilty to the underlying felony for that aggravator. He asserts that his counsel for that offense was ineffective and that his counsel in this case was ineffective in failing to raise this issue at trial. He argues that an evidentiary hearing is required to determine the merits of this claim. We find this claim to be without merit. Even if the conviction were overturned, this aggravating circumstance would still have been present at the time Ragsdale committed the murder; that is, at the time he committed the murder, he was in fact under a sentence of imprisonment, regardless of the validity of the conviction underlying that sentence.
Accordingly, for the reasons expressed, we affirm in part and reverse in part the trial court's order denying relief. We direct the trial court to hold, within sixty days from the date this opinion becomes final, an evidentiary hearing on the contentions that Ragsdale's trial counsel was ineffective for failing to properly investigate and present evidence in mitigation and that Ragsdale was deprived of an effective mental health expert.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, KOGAN and WELLS, JJ., concur.
ANSTEAD, J., concurs in result only.
NOTES
[1] Ragsdale raises the following issues in this appeal, asserting that: (1) he has been denied access to public records; (2) the trial judge should have recused himself in this case; (3) Ragsdale was deprived of an adversarial testing in the guilt phase; (4) he was deprived of an adversarial testing in the penalty phase; (5) he was denied effective mental health assistance; (6) the trial judge erred in summarily denying Ragsdale's competency claim; (7) Ragsdale was denied effective assistance due to his counsel's failure to object to allegedly improper argument; (8) his counsel was ineffective in presenting the closing argument; (9) the jury instructions improperly shifted the burden of proof; (10) the jury instructions were improper; (11) the trial judge improperly assessed alleged jury instruction error; (12) the jury's sense of responsibility was unconstitutionally diluted; (13) Florida's death penalty statute is unconstitutional; (14) Ragsdale was denied effective assistance by his attorney's alleged failure to assure his presence at all critical stages of the proceedings; (15) the trial court improperly found no factors in mitigation; (16) the trial judge was biased; (17) the aggravating circumstance of "committed while under sentence of imprisonment" was unconstitutional; (18) death by electrocution is cruel and unusual punishment; (19) Ragsdale was wrongly shackled throughout his trial; (20) he was denied his right to due process due to his inability to interview jurors; and (21) the cumulative nature of the errors in this case warrant relief.
[2] In Remeta v. Dugger, 622 So.2d 452, 454 (Fla. 1992) (citations omitted), we said:

As we stated in Medina v. State, 573 So.2d 293, 295 (Fla.1990) (citation omitted): "Proceedings under rule 3.850 are not to be used as a second appeal. Moreover, it is inappropriate to use a different argument to relitigate the same issue." Likewise, issues that could have been raised on direct appeal, but were not, are noncognizable claims through collateral attack. Johnson v. State, 593 So.2d 206 (Fla. 1992); Smith v. State, 445 So.2d 323 (Fla. 1983).
Under this standard, we find that claims six, seven, nine through sixteen, and eighteen through twenty are procedurally barred because they could and should have been raised on direct appeal or were raised and rejected on direct appeal. Further, to the extent these claims assert ineffective assistance of counsel, Ragsdale has not met the two-part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (deficient performance by counsel that prejudiced him). We also find his eighth claim to be without merit because he has failed to establish how the additional argument of counsel in closing would have changed the outcome of the proceeding.
[3] According to Ragsdale, the State has in its possession a juvenile complaint report, Department of Health and Rehabilitative Services referral history on Leon Illig, out-of-state criminal records, hospital patient records, confidential emergency call records, financial records, and presentence investigation reports.
[4] Ragsdale also contends that the judge failed to conduct an adequate review because he did not listen to three audio tapes contained with the materials. After reviewing these tapes, we have determined that the judge apparently did not review the tapes because they had already been provided to Ragsdale.

In his motion to compel, Ragsdale stated as follows: "Moreover, various witnesses, including co-defendant Leon Illig and Cindy LaFlamboy, were interviewed by law enforcement and these interviews were taped. No tapes of these interviews have been disclosed." In the State's response, the State answered the motion by stating: "With letter dated December 18, 1995, CCR provided four blank cassette tapes for copying the tapes which the State, in the response letter of February 17, 1995, had informed CCR were available for copying.... The copied cassette tapes were returned to CCR on January 9, 1996.... The State Attorney has complied with CCR's public record request...." In its reply to the State's response, Ragsdale made no further mention of the tapes.
The tapes contained in the sealed materials contain interviews of Illig, Eugene Ragsdale, Terry Ragsdale, and Ernie Ragsdale, and appear to be three of the four tapes referenced in Ragsdale's motion to compel and the State's response, which were given to CCR. In any event, we have listened to the three audio tapes and have determined that nothing therein contains information that would undermine confidence in the outcome of Ragsdale's conviction or sentence.
[5] The assertion that counsel was incompetent in allowing Illig to take the Fifth Amendment should have been raised on direct appeal and no facts are provided as to what Illig would have said had he not taken the Fifth. Further, Ragsdale provided no factual allegations to establish that he was intoxicated on the night of the murder. Any error regarding Ragsdale's competency should have been raised on direct appeal. Johnston v. Dugger, 583 So.2d 657, 660 (Fla.1991); Bundy v. State, 538 So.2d 445, 447 (Fla. 1989).