PER CURIAM.
Michael A. Tanzi appeals the denial of his postconviction motion filed under Florida Rule of Criminal Procedure 3.851 and petitions this Court for a writ of habeas corpus.[1] For the reasons that follow, we affirm the denial of his motion and deny his habeas petition.
I. BACKGROUND
Michael A. Tanzi pled guilty and was sentenced to death for the murder of Janet Acosta. On direct appeal, this Court described the facts as follows:
During her lunch hour on April 25, 2000, Janet Acosta was reading a book while seated inside her maroon van parked at the Japanese Gardens in Miami. At that time, Tanzi was stranded in Miami without a means of returning to Key West, where he had been residing for the previous months. Tanzi saw Acosta sitting in her vehicle with her window rolled down and approached her, asking for a cigarette and the time. When Acosta was distracted, Tanzi punched her in the face until he gained entry to the van. He then threatened her with a razor blade and drove away with Acosta in the van. Tanzi held Acosta by the wrist until he reached Homestead.
Upon reaching Homestead, Tanzi stopped at a gas station, where he bound Acosta with rope that was in her van and gagged her with a towel. Tanzi further threatened Acosta, telling her that if she kicked or made noise he would cut her from ear to ear. Tanzi took Acosta’s fifty-three dollars in cash. He then bought some cigarettes and a soda and attempted to use Acosta’s bank card, which he had obtained after rifling through her belongings. While still in *487 Homestead, Tanzi also forced Acosta to perform oral sex, threatening to kill her with his razor if she injured him. However, he stopped her from continuing because Acosta’s teeth were loose as a result of the earlier beating.
Tanzi then continued to drive with Acosta bound and gagged in the rear of the van until he reached Tavernier in the Florida Keys, where he stopped at approximately 5:15 p.m. to withdraw money from Acosta’s bank account. He again threatened Acosta with the razor in order to obtain Acosta’s personal identification number. Tanzi thereafter stopped at a hardware store to purchase duct tape and razor blades.
Tanzi continued his journey until approximately 6:30 p.m. when he reached Sugarloaf Key. He decided that he needed to get rid of Acosta as she was getting in the way. He also knew he would get caught quickly if he released her alive. Tanzi proceeded to Blimp Road, an isolated area in Cudjoe Key. Tanzi told Acosta that he was going to kill her and then crosslaeed a piece of rope and began to strangle her. He temporarily stopped to place duct tape over her mouth, nose, and eyes in an attempt to stifle the noise. Tanzi then continued to strangle Acosta until she died. Tanzi disposed of Acosta’s body in a wooded, secluded area where he thought she would go unnoticed.
After the murder, Tanzi drove to Key West, where he shopped, ate, smoked marijuana, visited with friends, and used Acosta’s ATM card. Tanzi had planned to access more of Acosta’s money, sleep in a hotel, purchase drugs, and alter the van’s appearance. However, on April 27, 2000, Tanzi’s activities were interrupted when the police observed him returning to Acosta’s van, which the police had located and placed under surveillance after Acosta’s friends and coworkers reported her missing. When the police approached Tanzi, he had receipts in his pocket showing his ATM withdrawals and purchases. Tanzi stated that he “knew what this was about.” He also spontaneously stated he wanted to talk about some bad things he had done.
After waiving his rights and while in a police car en route to the Key West Police Department, Tanzi confessed that he had assaulted, abducted, robbed, sexually battered, and killed Janet Acosta. Tanzi repeated his confession with greater detail several times on audio and video tape. Tanzi also showed the police where he had disposed of Janet Acosta’s body and where he had discarded the duct tape and rope.
Tanzi was indicted for the first-degree murder of Janet Acosta.... Initially, Tanzi pled not guilty; however, shortly before trial, Tanzi entered a guilty plea to the first-degree murder, carjacking, kidnapping, and armed robbery counts.
Tanzi v. State, 964 So.2d 106, 110-11 (Fla.2007).
During the penalty phase, Tanzi presented two mental health experts, a forensics social worker specializing in sexual behavior problems, and a counselor at a homeless shelter, who testified about Tan-zi’s long history of mental problems and his stays in and diagnoses at various institutions. The social worker disclosed that Tanzi, when eight years old, was fondled by a thirteen-year-old boy and that the older boy later penetrated Tanzi anally. The sexual abuse continued for five years, ending only when the perpetrator turned eighteen and enlisted in the military. The social worker also explained that Tanzi acted out sexually in his youth following the abuse.
Dr. Vicary, a psychiatrist, testified that Tanzi suffered from bipolar disorder, substance abuse, paraphilia, and antisocial personality disorder. Dr. Raphael, a psy *488 chologist, testified that Tanzi suffered from polysubstance dependence, PTSD, exhibitionism, sexual sadism, voyeurism, ADHD, a learning disability, bereavement, and antisocial personality disorder. Dr. Raphael also stated that his firm suspected one of (and could not rule out) schizophrenia, schizoaffective disorder, or psychotic disorder.
Additionally, Tanzi’s mother testified that she thought that Tanzi was a normal three year old but that he was having trouble getting along with other children by six years old. She also testified that Tanzi’s father abused him verbally and physically after Tanzi’s father was diagnosed with pancreatic cancer. She noticed changes in Tanzi’s behavior when he was eight years old following his father’s illness and death and following sexual abuse at the hands of an older boy. She sought treatment for Tanzi at various institutions throughout Tanzi’s childhood.
Following the penalty phase, the jury returned a unanimous recommendation of death, and the trial court followed the jury’s recommendation. Tanzi, 964 So.2d at 110.[2] This Court affirmed the death sentence on direct appeal. M[3]
In February 2009, Tanzi filed a motion for postconviction relief. After summarily denying several claims and after holding an evidentiary hearing on Tanzi’s claims alleging ineffective assistance of trial counsel during the penalty phase, the postconviction court denied relief. Tanzi now appeals the denial of his postconviction motion. He also petitions this Court for a writ of habeas corpus.
II. POSTCONVICTION MOTION

A. Meaningful Appellate Review

First, Tanzi asserts that he is being denied a meaningful appellate review be *489 cause the trial court did not render an order that included detailed findings of fact and conclusions of law. Because the orders in this case are sufficient to discern the trial court’s reasoning for denying Tanzi’s postconviction claims, we conclude that Tanzi is not being denied meaningful appellate review.
Florida Rule of Criminal Procedure 3.851(f)(5)(D) sets forth the trial judge’s responsibilities in rendering a postconviction order:
Immediately following an evidentiary hearing, the trial court shall order a transcript of the hearing which shall be filed within 30 days. Within 30 days of receipt of the transcript, the court shall render its order, ruling on each claim considered at the evidentiary hearing and all other claims raised in the motion, making detailed findings of fact and conclusions of law with respect to each claim, and attaching or referencing such portions of the record as are necessary to allow for meaningful appellate review. The order issued after the evidentiary hearing shall resolve all the claims raised in the motion and shall be considered the final order for purposes of appeal. The clerk of the trial court shall promptly serve upon the parties and the attorney general a copy of the final order, with a certificate of service.
In Mendoza v. State, 964 So.2d 121, 129 (Fla.2007), this Court determined that the circuit court had, after an evidentiary hearing, rendered an order denying post-conviction relief that did not provide sufficient findings of facts and conclusions of law to provide meaningful appellate review. This Court stated that “the circuit court neither stated on the record nor rendered an order detailing its factual findings and the reasons for its decision on the postconviction motion.” Id. at 128. Specifically, this Court explained that “[t]he circuit court denied Mendoza’s post-conviction motion claims in a very brief, two-page order, which simply set out the standards from case law ... and held: ‘This Court finds that the Defendant’s petition did not meet nor did it overcome the requirements of the above-mentioned case law.’ ” Id. at 127. And because the judge was deceased, this Court remanded for a new evidentiary hearing before a new judge. Id. at 128.
In contrast to the order in Mendoza, the order following the evidentiary hearing in this case is nine and one-half pages and includes forty-nine findings of fact and nine conclusions of law. And importantly, one can discern from the order the trial court’s reasoning for denying Tanzi’s various ineffectiveness of counsel during the penalty phase claims. For example, it is apparent from the order that the trial court concluded that Tanzi was not prejudiced by trial counsel’s failure to call Tan-zi’s abuser to testify during the penalty phase because the abuser’s testimony during the evidentiary hearing actually served to minimize the sexual abuse that Tanzi had suffered.
Tanzi also mentions that the order following the evidentiary hearing did not address his claims that were summarily denied. Tanzi’s statement is accurate in this regard. However, the trial court did issue an order after the Hujf[4] hearing that provides the court’s reasoning for summarily denying Tanzi’s other claims.
Accordingly, because the orders included sufficient findings of facts and reasoning for the trial court’s denial of Tanzi’s claims, Tanzi is not being deprived of meaningful appellate review.

*490
B. Ineffective Assistance of Counsel During the Penalty Phase

Next, Tanzi asserts that trial counsel was ineffective during the penalty phase for (1) failing to present consistent mental health testimony; (2) failing to investigate and present Tanzi’s XYY abnormality; (3) presenting Dr. Vicary’s testimony; and (4) failing to present additional mitigation witnesses. Because Tanzi has failed to establish the requirements necessary for relief, we disagree.
After the United States Supreme Court’s decision in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court explained that for ineffective assistance of counsel claims to be successful, two prongs must be satisfied:
First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.
Bolin v. State, 41 So.3d 151, 155 (Fla.2010) (quoting Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986)).
Regarding the deficiency prong of Strickland, there is a strong presumption that trial counsel’s performance was not ineffective. Strickland, 466 U.S. at 690, 104 S.Ct. 2052. Moreover, “[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time.” Id. at 689, 104 S.Ct. 2052. The defendant carries the burden to “overcome the presumption that, under the circumstances, the challenged action ‘might be considered sound trial strategy.’ ” Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).
Regarding the prejudice prong of Strickland, the defendant “must show that but for his counsel’s deficiency, there is a reasonable probability he would have received a different sentence. To assess that probability, we consider ‘the totality of the available mitigation evidence — both that adduced at trial, and the evidence adduced in the [postconviction] proceeding1 — and ‘reweig[h] it against the evidence in aggravation.’ ” Porter v. McCollum, 558 U.S. 30, 130 S.Ct. 447, 453-54, 175 L.Ed.2d 398 (2009) (quoting Williams v. Taylor, 529 U.S. 362, 397-98, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). “A reasonable probability is a ‘probability sufficient to undermine confidence in the outcome.’ ” Henry v. State, 948 So.2d 609, 617 (Fla.2006) (quoting Strickland, 466 U.S. at 694, 104 S.Ct. 2052).
Because both prongs of Strickland present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the trial court’s factual findings that are supported by competent, substantial evidence, but reviewing the trial court’s legal conclusions de novo. See Sochor v. State, 883 So.2d 766, 771-72 (Fla.2004).
1. Consistent Mental Health Testimony
Tanzi argues that trial counsel was ineffective for presenting the testimony of mental health experts who did not collaborate and, therefore, diagnosed Tanzi with varying mental disorders. This Court disagrees.
Tanzi has failed to demonstrate deficiency. At the evidentiary hearing, trial counsel testified that his strategy was to “compartmentalize” his mental health experts to avoid any charge of col *491 lusion and any lessening of the experts’ credibility. And “strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel’s decision was reasonable under the norms of professional conduct.” Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000).
Additionally, Tanzi has not demonstrated prejudice. The jury benefited from extensive testimony regarding Tanzi’s serious mental health problems, including his diagnoses and stays at various institutions in his youth. This mental health evidence served as compelling mitigating evidence. Further, Dr. Vieary testified during the penalty phase that Tanzi had been diagnosed as bipolar by personnel at the Key West jail; therefore, the bipolar diagnosis did not stand out during the penalty phase as an inconsistent diagnosis. In fact, during the evidentiary hearing, Dr. Raphael explained that he considered bipolar elements of Tanzi’s personality and stated that he could not rule out the possibility that Tanzi suffered from schizoaffective disorder bipolar type. Therefore, the nonidentical diagnoses of Dr. Vieary and Dr. Raphael are not sufficient to undermine our confidence in the outcome.
Accordingly, we affirm the trial court’s denial of relief.
2. XYY Abnormality
Further, Tanzi claims that counsel was ineffective during the penalty phase for failing to investigate and present evidence of Tanzi’s XYY genotype. We disagree.
During the evidentiary hearing, Dr. Muench testified that having an extra Y chromosome does not cause criminal or antisocial behavior. While the XYY abnormality is statistically associated with developmental problems, Dr. Muench agreed with a study concluding that as a general condition XYY boys develop normally during childhood. Dr. Muench also explained that when he advised parents in cases where their child was going to be born XYY, he advised them “that more than likely their child would be normal.” Furthermore, Dr. Raphael testified during the evidentiary hearing that the knowledge that Tanzi had an extra Y chromosome would not have changed any of the opinions he expressed during the penalty phase. Additionally, to the extent that XYY is statistically associated with developmental issues, trial counsel during the penalty phase presented evidence of Tan-zi’s childhood developmental problems, including diminished socialization and a learning disorder. Therefore, there is not a reasonable probability that investigating and presenting evidence of Tanzi’s XYY genetic abnormality would have led to a different result. The mitigating evidence adduced at the evidentiary hearing combined with the mitigating evidence presented at the penalty phase would not outweigh the evidence in aggravation as this case included six aggravating circumstances given great and utmost weight. Our confidence in the outcome is not undermined.
Accordingly, we affirm the trial court’s denial of relief.
3. Dr. Vieary
Tanzi also claims that trial counsel was ineffective for presenting the testimony of Dr. Vieary as a mental health expert and for failing to provide Dr. Vieary with a videotape of Tanzi’s confession. However, we affirm the trial court’s denial of this claim.
First, Tanzi has failed to demonstrate that the decision to present Dr. Vicary’s testimony during the penalty phase was deficient. Although Dr. Vicary’s testimony was subject to impeachment based upon Dr. Vicary’s misconduct in altering *492 his notes during the Menendez brothers’ trial in California, Dr. Vicary was the only defense mental health expert that had diagnosed Tanzi with bipolar disorder, a serious mental health disorder that could serve as mitigating evidence. Furthermore, trial counsel sought to minimize the damage to Dr. Vicary’s credibility by first filing a motion in limine to exclude this evidence and then by addressing the misconduct issue during direct examination. Therefore, the presentation of Dr. Vicary’s testimony appears to have been a reasonable strategic decision. See Occhicone v. State, 768 So.2d 1087, 1048 (Fla.2000).
Additionally, Tanzi has failed to establish prejudice. Both Dr. Vicary and Dr. Raphael testified that Tanzi suffered from serious mental health issues throughout his life. However, as explained above, Dr. Vicary’s testimony was particularly helpful in establishing mitigation due to his diagnosis of bipolar disorder and his description of the difficulties facing bipolar children. While Dr. Vicary’s credibility may have been lessened by the disclosure of his misconduct in the Menendez case as well as Dr. Vicary’s admission that, although he had read a transcript, he had not viewed Tanzi’s videotaped confession, the overall presentation of Dr. Vicary’s testimony does not undermine confidence in the outcome. Given the aggravation and mitigation evidence in this case, there is not a reasonable probability that the result would have been different absent Dr. Vi-cary’s testimony.
Accordingly, because Tanzi has not shown either deficiency or prejudice, we affirm the trial court’s denial of this claim.
4. Additional Mitigation Witnesses
Tanzi further argues that trial counsel was ineffective during the penalty phase because his abuser, two former neighbors, an additional mental health expert, and a former camp counselor were available but never called to testify. Additionally, Tanzi argues that his mother’s testimony during the penalty phase was incomplete. However, because Tanzi has not demonstrated either the deficiency or prejudice prongs of Strickland, we affirm the trial court’s denial of relief.
The trial record reflects that trial counsel sought and was granted the appointment of multiple mental health experts to assist with the defense. Further, during the evidentiary hearing, trial counsel explained that he sought out lay witnesses, school records, medical records, and psychological records. Trial counsel also explained that he and an investigator traveled to Massachusetts to uncover information regarding Tanzi’s background ' and possible mitigation evidence. And during the penalty phase, trial counsel presented the testimony of two mental health experts to support the proposed mitigator that Tanzi’s ability to appreciate the criminality of his conduct and to conform it to the requirements of the law was impaired. The mental health experts, a social worker, and a homeless shelter counselor testified during the penalty phase about Tanzi’s history of mental problems and his stays in and diagnoses at various institutions. The witnesses also addressed the sexual abuse Tanzi suffered as a young child. Further, in an effort to humanize Tanzi, trial counsel presented the testimony of Tanzi’s mother along with photographs of Tanzi growing up. Thus, Tanzi has failed to demonstrate that trial counsel’s decision to not present all possible witnesses was deficient. See Strickland, 466 U.S. at 691, 104 S.Ct. 2052 (“[Cjounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.”); see also Everett v. State, 54 So.3d 464, 474 (Fla.2010) (“This Court has also consistently held that a trial *493 counsel’s decision to not call certain witnesses to testify at trial can be reasonable trial strategy.”).
Additionally, Tanzi has failed to establish prejudice. Presenting the above-mentioned witnesses who testified during the postconviction hearing “would barely have altered the sentencing profile presented to the sentencing judge.” Strickland, 466 U.S. at 700, 104 S.Ct. 2052. This is because the mitigation evidence Tanzi presented through these witnesses was largely cumulative of the mitigation evidence presented during the penalty phase. For example, while Shawn Martin testified during the evidentiary hearing that he had a sexual relationship with Tanzi when Tan-zi was a child, multiple witnesses testified during the penalty phase that Tanzi had been sexually abused by an older boy and that the abuse began when Tanzi was eight and continued for years. And although Shawn Martin also testified during the evi-dentiary hearing that Tanzi had been exposed to pornography and had watched his mother having sex, Dr. Vicary testified during the penalty phase that Tanzi had been exposed to pornography at an early age and had witnessed his mother having sex in an aggressive manner with various boyfriends. Moreover, witnesses at both the postconviction hearing and the penalty phase testified that Tanzi’s father became abusive after becoming ill and that Tanzi exhibited behavioral issues following his father’s death and following sexual abuse. Tanzi’s mother even acknowledged on cross-examination during the evidentiary hearing that there was nothing that she could add that was not provided to the defense originally. Therefore, because the additional evidence presented during the postconviction hearing was largely cumulative of the evidence presented during the penalty phase, Tanzi has not established a reasonable probability of a different result had trial counsel presented this additional evidence during the penalty phase. See Atwater v. State, 788 So.2d 223, 284 (Fla.2001) (“There is no reasonable probability that re-presenting virtually the same evidence through other witnesses would have altered the outcome in any manner.”). Confidence in the outcome is not undermined.
Accordingly, this Court affirms the trial court’s denial of Tanzi’s claim that trial counsel was ineffective during the penalty phase.

C. Summarily Denied Claims

Tanzi argues that the trial court erred in denying several of his postconviction claims without an evidentiary hearing. However, because the claims were either facially insufficient, procedurally barred, or without merit, this Court affirms the trial court’s summary denial.
An evidentiary hearing must be held on an initial 8.851 motion whenever the movant makes a facially sufficient claim that requires a factual determination. See Amendments to Fla. Rules of Crim. Pro. 3.851, 772 So.2d 488, 491 n. 2 (Fla.2000). “A summary or conclusory allegation is insufficient to allow the trial court to examine the specific allegations against the record.” Ragsdale v. State, 720 So.2d 203, 207 (Fla.1998). Because a court’s decision whether to grant an evi-dentiary hearing on a rule 3.851 motion is ultimately based on written materials before the court, its ruling is tantamount to a pure question of law, subject to de novo review. See State v. Coney, 845 So.2d 120, 137 (Fla.2003).
First, Tanzi argues that the trial court should have granted a hearing on his claim that the jury improperly considered lack of remorse. He also alleges that the trial court improperly denied his request to interview the jurors. However, this claim was properly denied -without a hearing because it is procedurally barred. Ac *494 cording to Tanzi, it was reported in a newspaper in April 2003, shortly after the penalty phase, that a juror had commented about Tanzi’s lack of remorse for his crimes. Tanzi did not raise the issue in the trial court after the juror’s alleged comment first came to light in 2003. Moreover, Tanzi did not raise the issue on direct appeal even though the direct appeal followed the entry of a written order denying his motion to withdraw his plea, an order that was issued in January 2005. Therefore, Tanzi’s juror misconduct claim is proeedurally barred.
Next, Tanzi asserts that an ev-identiary hearing should have been held on his claim that the State violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to timely disclose evidence that Tanzi may have the XYY genotype. But since Tanzi acknowledges that the State in fact disclosed this possibility to the defense before the penalty phase, summary denial was proper. As part of establishing a Brady violation, the defendant must show that favorable evidence was willfully or inadvertently suppressed by the State. See Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); see also United States v. Ziperstein, 601 F.2d 281, 291 (7th Cir.1979) (“As long as ultimate disclosure is made before it is too late for the defendant to make use of any benefits of the evidence, Due Process is satisfied.”); White v. State, 816 A.2d 776, 778 (Del.2003) (finding no Brady violation where materials were disclosed a week prior to trial and defense counsel did not object or ask for a continuance).
Tanzi also alleges that the trial court erred in summarily denying his claim that counsel was ineffective at the Spencer[5] hearing. However, Tanzi did not allege specific facts explaining how additional testimony (primarily from unnamed sources) at the Spencer hearing would have established prejudice. Accordingly, the motion did not sufficiently allege prejudice, and we affirm the summary denial of this claim. See Ragsdale, 720 So.2d at 208 (finding that trial judge properly denied evidentiary hearing where defendant provided insufficient facts as to “how the outcome would have been different had counsel acted otherwise”); see also Doorbal v. State, 983 So.2d 464, 484 (Fla.2008) (“Counsel for Doorbal appears to operate under the incorrect assumption that con-clusory, nonspecific allegations are sufficient to obtain an evidentiary hearing on claims of ineffective assistance of counsel, and specific facts and arguments need not be disclosed or presented until the eviden-tiary hearing.”).
Further, Tanzi argues that the trial court erred in summarily denying his claim that trial counsel was laboring under a conflict of interest. However, Tanzi bases this postconviction claim upon allegations that were known during the direct appeal. Thus, this conflict of interest claim could have and should have been raised on direct appeal and is now procedurally barred.
Finally, Tanzi argues that the trial court erred in summarily denying his claim that Florida’s lethal injection statute and existing lethal injection procedures violate the U.S. and Florida Constitutions. However, the trial court did not err in denying Tan-zi’s claim without an evidentiary hearing as this Court has repeatedly rejected similar lethal injection challenges. See, e.g., Everett v. State, 54 So.3d 464, 486 (Fla.2010); Tompkins v. State, 994 So.2d 1072, 1081 (Fla.2008); Power v. State, 992 So.2d 218, 220-21 (Fla.2008).
*495 Accordingly, because the claims Tanzi mentions were facially insufficient, procedurally barred, or without merit, we affirm the trial court’s summary denial.

D. Motion to Amend

Under this claim, Tanzi contends that his motion for leave to amend his postconviction motion should have been granted. Tanzi’s motion for leave, which sought to add two claims, was filed more than thirty days before the evidentiary hearing. However, because good cause was not shown, the trial judge did not abuse its discretion in denying Tanzi’s motion for leave to amend. See Doorbal, 983 So.2d at 484 (“The refusal of a trial court to grant a party leave to amend a 3.851 motion is reviewed under an abuse of discretion standard.”).
Florida Rule of Criminal Procedure 3.851(f)(4) provides the following in pertinent part:
A motion filed under this rule may be amended up to 30 days prior to the evidentiary hearing upon motion and good cause shown. The trial court may in its discretion grant a motion to amend provided that the motion sets forth the reason the claim was not raised earlier and attaches a copy of the claim sought to be added.
A trial court does not abuse its discretion in refusing to grant leave to amend when the facts asserted in the amended motion are vague, nonspecific, and fail to suggest how relief may be warranted. Doorbal, 983 So.2d at 485. Additionally, a trial court does not abuse its discretion when the facts in the amended motion “were readily available to postconviction counsel at the time that [the defendant] filed his initial 3.851 motion and, therefore, these claims should have been raised in that motion.” Lugo v. State, 2 So.3d 1, 19 (Fla.2008).
Here, with regard to his claim based upon a 2009 National Academy of Sciences (NAS) report on forensic science, Tanzi’s amended motion asserted facts that were vague and that failed to suggest how relief may be warranted. The amendment describes some of the NAS report’s recommendations for and issues with DNA evidence and asserts that this information somehow provides a basis for attacking the State’s DNA expert’s testimony that Tan-zi’s blood was found on the inside pocket of the victim’s jeans. Tanzi then argues that, because the report undermines this DNA expert’s testimony, the trial court’s finding of the aggravator that the murder was committed during sexual batteries would be discredited. However, it is unclear how the report’s discussion of DNA evidence could discredit the committed during sexual batteries aggravator given the other evidence supporting this aggravator, namely Tanzi’s confession to forcing the victim to perform oral sex and the medical examiner’s testimony that the victim had a laceration to the labia shortly before death.
The other claim in Tanzi’s amended motion concerned an alleged confrontation clause violation based upon Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). However, no good cause was shown for Tanzi’s failure to raise this claim in his original 3.851 motion as the trial testimony sought to be challenged has always been available.
Accordingly, we conclude that the trial court did not abuse its discretion in denying Tanzi’s motion for leave to amend.

E. Records Request

Next, Tanzi argues that the trial court erred in denying his request for the Monroe County Sheriffs Department to produce its rights advisory card, used in providing warnings to suspects under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), as well as *496 the personnel file of Detective James Norman. However, we affirm the trial court.
The scope of requests made pursuant to Florida Rule of Criminal Procedure 3.852(g) and (i) are governed by Florida Rule of Criminal Procedure 3.852(1), which provides that the records must not be privileged or immune from production and that the records are “either relevant to the subject matter of the proceeding” or “reasonably calculated to lead to the discovery of admissible evidence.” In reviewing a trial court’s denial of public records requests, this Court applies an abuse of discretion standard. Diaz v. State, 945 So.2d 1136, 1149 (Fla.2006).
The trial court did not abuse its discretion in denying Tanzi’s request for the Monroe County Sheriffs Department’s Miranda card since the card was not used in this case. Tanzi acknowledges that officers from the Monroe County Sheriffs Department were not the officers who gave him Miranda warnings. Therefore, the card used by that department has no relevance here.
Regarding Detective Norman, the trial court ordered the production of his internal affairs file and training records. And the Monroe County Sheriffs Office filed a notice of compliance indicating that it had produced the records as ordered. No other portion of Detective Norman’s personnel file appears to be reasonably calculated to lead to the discovery of admissible evidence.
Accordingly, the trial court did not abuse its discretion with regard to these records requests.
III. HABEAS PETITION
In his habeas petition, Tanzi alleges that his appellate counsel was ineffective on direct appeal for failing to raise a claim regarding misstatements of law during voir dire and for failing to raise a Crawford claim. For the reasons that follow, we deny his petition.
Claims of ineffective assistance of appellate counsel are appropriately presented in a petition for a writ of habeas corpus. See Freeman v. State, 761 So.2d 1055, 1069 (Fla.2000). Consistent with the Strickland standard, to grant habeas relief based on ineffectiveness of counsel, this Court must determine:
[F]irst, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine the confidence in the correctness of the result.
Pope v. Wainwright, 496 So.2d 798, 800 (Fla.1986); see also Freeman, 761 So.2d at 1069; Thompson v. State, 759 So.2d 650, 660 (Fla.2000).
“If a legal issue ‘would in all probability have been found to be without merit’ had counsel raised the issue on direct appeal, the failure of appellate counsel to raise the meritless issue will not render appellate counsel’s performance ineffective.” Schoenwetter v. State, 46 So.3d 535, 563 (Fla.2010) (quoting Williamson v. Dugger, 651 So.2d 84, 86 (Fla.1994)). “In fact, appellate counsel is not necessarily ineffective for failing to raise a claim that might have had some possibility of success; effective appellate counsel need not raise every conceivable nonfrivolous issue.” Valle v. Moore, 837 So.2d 905, 908 (Fla.2002) (citing Jones v. Barnes, 463 U.S. 745, 751-53, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983); Provenzano v. Dugger, 561 So.2d 541, 549 (Fla.1990)).
Tanzi contends that appellate counsel was ineffective for failing to raise a *497 claim on direct appeal based upon allegedly incorrect statements of law during voir dire. More specifically, Tanzi’s habeas petition alleges that prospective juror Covina and prospective juror Plowden were improperly instructed upon whether a death sentence is required in certain circumstances. But neither of these prospective jurors in fact served on Tanzi’s jury. Therefore, the allegedly defective statements of the law could not have affected Tanzi’s trial, and appellate counsel cannot be considered ineffective for failing to raise this meritless claim.
Tanzi also argues that appellate counsel was ineffective for failing to raise an unpreserved Crawford claim on direct appeal because the error constitutes fundamental error. Tanzi contends it was fundamental error for the State’s DNA analyst to testify to others’ findings about the presence of Tanzi’s blood on the inside of the victim’s pocket because this evidence supported the commission during the course of sexual batteries aggravator. “A fundamental error is error that ‘reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.’” Rodriguez v. State, 919 So.2d 1252, 1282 (Fla.2005) (quoting Brown v. State, 124 So.2d 481 (Fla.1960)).
Under the circumstances of this case, the Crawford violation relating to evidence supporting the during the course of sexual batteries aggravator cannot amount to fundamental error because this Court concluded on direct appeal that it was harmless error for the trial court to find two separate during the course of a felony aggravators, one for kidnapping and one for sexual batteries. See Tanzi, 964 So.2d at 117. Additionally, the evidence associated with the Crawford violation only pertained to forced vaginal penetration, and the during the course of sexual batteries aggravator was assessed by the trial court for forced oral sex as well as forced vaginal penetration. See Brown v. State, 473 So.2d 1260,1266-67 (Fla.1985) (where multiple felonies were stated as supporting the during the course of a felony aggravator, the validity of the aggravator would not undermined even if one of the felonies were eliminated). Moreover, in addition to the testimony of the State’s DNA expert that violated Crawford, the forced vaginal penetration portion of the aggravator was also supported by the medical examiner’s testimony that the victim had suffered a laceration to her labia shortly before death. Consequently, the error does not reach down into the validity of the penalty phase itself. And because the unpre-served Crawford error does not constitute fundamental error, Tanzi is not entitled to relief.
IV. CONCLUSION
For the foregoing reasons, we affirm the denial of Tanzi’s postconviction motion and deny his habeas petition.
It is so ordered.
CANADY, C.J., and LEWIS, QUINCE, POLSTON, LABARGA, and PERRY, JJ., concur.
PARIENTE, J., concurs in result with an opinion.

. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const.

. The trial court found the following aggrava-tors:
(1) that the murder was committed by a person previously convicted of a felony and under sentence of imprisonment or on felony probation; (2) that the murder was committed during the commission of a kidnapping; (3) that the murder was committed during the commission of two sexual batteries; (4) that the crime was committed for the purpose of avoiding arrest; (5) that the murder was committed for pecuniary gain; (6) that the murder was especially heinous, atrocious, or cruel (HAC); and (7) that the murder was committed in a cold, calculated, and premeditated (CCP) manner. The court gave each aggravator "great weight" except the HAC aggravator, which the court gave "utmost weight.” The court found the following mitigators: (1) that Tanzi suffered from "axis two” personality disorders; (2) that he was institutionalized as a youth; (3) that his behavior benefited from psychotropic drugs; (4) that he lost his father at an early age; (5) that he was sexually abused as a child; (6) that he twice attempted to join the military; (7) that he cooperated with law enforcement; (8) that he assisted inmates by writing letters and that he enjoys reading; (9) [that] his family has a loving relationship for him; and (10) that he had a history of substance abuse. Tanzi, 964 So.2d at 112 n. 1.

. In addition to a claim based on Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), Tanzi raised the following issues on direct appeal:
(A) the trial court erred in denying Tanzi’s motion to withdraw his guilty plea; (B) the trial court erred in permitting questions regarding lack of remorse; (C) the trial court erred in permitting impeachment of Tanzi's expert witness by a specific and unrelated act of misconduct; (D) the trial court erred in admitting Tanzi’s confession to sexual battery; (E) the trial court erred in assessing the murder in the course of a felony aggravator twice; and (F) the trial court did not properly consider and weigh mitigation evidence.
Id. at 112. This Court ruled that the trial court erred in assessing the committing during the course of a felony aggravator twice. Id. at 117. However, this Court determined that the error was harmless. Id.

. Huff v. State, 622 So.2d 982 (Fla. 1993).

. Spencer v. State, 615 So.2d 688 (Fla.1993).