# Supreme Court of Florida

No. SC2022-1221

**MICHAEL GORDON REYNOLDS,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

November 9, 2023

PER CURIAM.

Michael Gordon Reynolds, a prisoner under sentence of death, appeals the trial court's order summarily denying his successive motion for DNA testing filed under Florida Rule of Criminal Procedure 3.853. For the reasons given below, we affirm.[1]

## BACKGROUND

In 2003, a jury convicted Reynolds of brutally murdering Danny Privett, Robin Razor, and their eleven-year-old daughter, Christina Razor. When initially questioned by law enforcement

---

1. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const.

about these crimes, Reynolds denied ever entering the victims' trailer. Yet, during trial, the State introduced DNA evidence showing that Reynolds's blood was "scattered throughout the interior of [that] trailer." *Reynolds v. State* (*Reynolds I*), 934 So. 2d 1128, 1141 (Fla. 2006). Specifically, his blood was on a Rugrats blanket, a pillow, white panties, and a piece of wood above the air conditioning unit. Reynolds's hair was also found in the trailer.

In addition to the blood and hair evidence, the State also presented incriminating statements made by Reynolds. For example, he admitted to having an altercation with Danny several weeks before the murder. Later, following his formal arrest, Reynolds confessed to two inmates that he committed the murders. In addition, the State presented evidence that a car similar to Reynolds's vehicle was near the victims' residence on the night of the murders and that, the following morning, Reynolds was seen washing his clothes with bleach.

During the defense's case, Reynolds argued a theory of innocence, suggesting that an individual named Justin Pratt[2] and

---

2. Pratt owned the trailer that Danny, Robin, and Christina lived in at the time of the murders.

his accomplices were the ones who committed the murders. Reynolds also sought to undermine the State's DNA evidence. According to Reynolds, that evidence was contaminated and mishandled and, thus, should not be credited.

Ultimately, the jury found Reynolds guilty of four crimes, including two counts of first-degree murder for killing Robin and Christina and one count of second-degree murder for killing Danny. At the penalty phase, following the State's presentation of aggravating circumstances, Reynolds waived his right to introduce mitigating evidence. Thereafter, the penalty-phase jury unanimously recommended a sentence of death for each first-degree murder conviction.

During the ensuing *Spencer*[3] hearing, Reynolds pressed a theory of residual doubt, which he supported through his own testimony. After the sentencing hearing, the court imposed two death sentences.

On direct appeal, we affirmed the convictions and death sentences in all respects. *Reynolds I*, 934 So. 2d at 1161. Since

---

3. *Spencer v. State*, 615 So. 2d 688 (Fla. 1993).

that time, Reynolds has unsuccessfully sought postconviction relief on several occasions.  Relevant to this appeal, Reynolds requested DNA testing of 24 items of physical evidence in a 2013 motion.  The trial court denied that motion, and Reynolds appealed.  We affirmed on the merits, noting that the testing "would not give rise to a reasonable probability of acquittal or lead to a lesser sentence in light of Reynolds' previous confession and other DNA evidence pointing to his presence at the crime scene."  *Reynolds v. State* (*Reynolds II*), 192 So. 3d 41 (Fla. 2015) (table decision).

The current case arose after Reynolds filed a second motion requesting DNA testing.  All the items he requested to be tested in the successive motion were documented at the time of his trial, and a majority of them were the subject of his prior unsuccessful rule 3.853 motion.  The trial court summarily denied the successive motion, finding it procedurally barred and insufficiently pled.  Reynolds now appeals.

## ANALYSIS

Reynolds argues that the trial court erred in summarily denying his successive motion for DNA testing.  Because his DNA

claim is both procedurally barred and without merit, he is not entitled to relief.[4]

**I.**

Reynolds's request for DNA testing is procedurally barred. "Claims raised and rejected in prior postconviction proceedings are procedurally barred from being relitigated in a successive motion." *Hendrix v. State,* 136 So. 3d 1122, 1125 (Fla. 2014) (citing *Van Poyck v. State,* 116 So. 3d 347, 362 (Fla. 2013)). Additionally, a postconviction litigant is barred from bringing any claims that could have been raised in prior litigation. *See Barwick v. State,* 361 So. 3d 785, 795 (Fla. 2023); *see also State v. McBride,* 848 So. 2d 287, 290 (Fla. 2003) (noting that collateral estoppel bars identical parties from relitigating the same issue in later proceeding).

In Reynolds's 2013 motion, he requested, among other things, the testing of white panties, a concrete block, a switch plate, the victims' clothing, and hair found in one victim's hand. The current motion also requested testing of those same items. Because we have already affirmed the denial of additional DNA testing on these

---

4. "The standard of review here is de novo." *Rogers v. State,* 327 So. 3d 784, 787 n.5 (Fla. 2021).

pieces of evidence, *Reynolds II*, 192 So. 3d at 41, Reynolds's claims as to those items are now barred.

Reynolds also requests DNA testing on certain items that were not included in the prior motion.[5] However, his request for DNA testing of these items is still procedurally barred. *See Barwick*, 361 So. 3d at 795 (affirming denial of claim that could have been raised in prior postconviction proceeding). The additional items were known to Reynolds at the time of his trial—well before the filing of his prior motion. Reynolds failed to include these items in his earlier motion, despite being aware of their existence. He is thus barred on res judicata grounds from now requesting that those items be tested. *See Tanzi v. State*, 94 So. 3d 482, 494 (Fla. 2012); *Topps v. State*, 865 So. 2d 1253, 1254-55 (Fla. 2004) (holding that res judicata bars claims that could have been raised in earlier proceedings).[6]

---

5. Though not entirely clear, items CR22 (swabs); ME10 (blood stains); ME11 (blood stains); TC57 (a ring with hair); K10-K12 (hair); K13 (hair); Q6 (hair); Q10-Q14 (hair); Q15-Q19 (hair); Q30-Q34 (hair); Q72 (hair); and RR1 (swabs) appear to be new requests.

6. In addition, the methods of testing requested by Reynolds in his successive motion—mitochondrial DNA testing, Y-STR, and

- 6 -

Even if Reynolds's claim were not procedurally barred, his motion still would not support relief. Under rule 3.853, Reynolds was required to demonstrate that there was "a reasonable probability that [he] would have been acquitted or . . . received a lesser sentence" had "the DNA evidence . . . been admitted at trial." Fla. R. Crim. P. 3.853(c)(5)(C); *Hitchcock v. State*, 866 So. 2d 23, 27 (Fla. 2004) (noting that the petitioner must "demonstrate the nexus between the potential results of DNA testing on each piece of evidence and the issues in the case"). Reynolds cannot meet this standard.

Inconsistent with Reynolds's contention that DNA evidence will exonerate him—which is based on his premise that DNA evidence was the primary reason for his guilt—we have repeatedly found that Reynolds's convictions do not depend solely on DNA evidence. *See Reynolds I*, 934 So. 2d at 1146; *Reynolds II*, 192 So. 3d at 41. As we noted in Reynolds's direct appeal:

> [T]he State also introduced expert testimony from a
> medical examiner demonstrating that the injury to

---

M-VAC—were all available when he previously requested DNA testing in 2013.

Reynolds' hand was inconsistent with his explanation of the injury; testimony from a neighbor of the victims who saw Danny Privett sitting on Reynolds' car, which was parked at the victims' residence the night the crimes were committed; microscopic and DNA analysis of a pubic hair found at the crime scene matched a hair sample taken from Reynolds; Reynolds' admission during an interview with law officers that he had a heated argument with Danny Privett; eyewitness testimony corroborating the circumstances surrounding the argument between Reynolds and Danny Privett; evidence that Reynolds denied ever being in the victims' residence—a statement that was clearly inconsistent with the considerable DNA evidence presented at trial which placed him inside the trailer; testimony from Reynolds' neighbor who saw him washing clothes at 5:30 a.m. on the morning the bodies were discovered; clothes found hanging on Reynolds' clothesline the morning the bodies were discovered that appeared to have been strongly bleached; and the testimony of two prisoners who had previously been incarcerated with Reynolds that Reynolds admitted to them that he had in fact committed the crimes.

*Reynolds I*, 934 So. 2d at 1146.

Given the evidence presented at trial, there is no reasonable probability that additional testing would lead to an acquittal. *See* Fla. R. Crim. P. 3.853(c)(5)(C).

Reynolds also failed to show that there is a reasonable probability that DNA testing would result in a reduced sentence. *See id.* He asserts that Pratt's (or some other unknown assailant's) involvement in the murders provides a basis for his death sentences

- 8 -

to be reduced to life sentences. In support of this mitigated-sentence argument, he relies on the doctrine of relative culpability. However, during the pendency of this appeal, we abandoned that doctrine. *Cruz v. State*, 48 Fla. L. Weekly S140, S144 (Fla. July 6, 2023).[7] Accordingly, Reynolds's argument relying on relative culpability cannot support his request for additional DNA testing. Thus, Reynolds's reduced-sentence argument also fails.

## CONCLUSION

For the reasons given above, we affirm the trial court's denial of Reynolds's successive motion for DNA testing.

It is so ordered.

MUÑIZ, C.J., and CANADY, LABARGA, COURIEL, GROSSHANS, and FRANCIS, JJ., concur.
SASSO, J., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Seminole County,
    Donna L. Surratt-McIntosh, Judge
    Case No. 591998CF003341A000XX

---

7. Regardless, relative culpability would not have applied to Reynolds because the claim is speculative. The State did not charge anyone else besides Reynolds with the murders, nor is there reason to believe the State would do so.

- 9 -

Eric Pinkard, Capital Collateral Regional Counsel, and Julissa R. Fontán, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

    for Appellant

Ashley Moody, Attorney General, Tallahassee, Florida, and Patrick Bobek, Assistant Attorney General, Daytona Beach, Florida,

    for Appellee