PER CURIAM.
Douglas Blaine Matthews appeals his conviction for first-degree murder and his sentence of death. For the reasons stated below, we affirm his conviction and sentence.[1]
I. BACKGROUND
On the evening of February 20, 2008, Daytona Beach Police Department officers responded to a call that a man was outside an apartment building asking for help. When they arrived on the scene, officers discovered Kirk Zoeller sitting in front of an open apartment door, nonresponsive, covered in blood, and gasping for air with blood pulsing from his neck. The officers entered the apartment and found blood covering the floor and walls. While clearing the apartment, officers discovered Donna Trujillo’s body on the bed in the bedroom. The officer who found Trujillo testified that she could not see her body from the main room of the apartment, which consisted of an open kitchen and living room, and that she stood in the bedroom doorway for 10 to 15 seconds before noticing the body because most of it was covered with a pillow. Zoeller and Trujillo were pronounced dead at the scene. According to the medical examiner, both victims had been stabbed to death.
Later that evening, acting on a tip, officers went to the home of Theresa Teague. Teague allowed the officers into her home and consented to a search. Inside, officers saw bloody sneakers and jeans in plain view on the floor and found Matthews, dressed only in boxers and socks, hiding under a pile of clothes in the bedroom. Officers obtained and executed a search warrant for Teague’s home and found a bloody shirt in a clear plastic bag and Kirk Zoeller’s wallet together inside a different bag.
Matthews made a statement to police detectives outside of Teague’s house, which Matthews’ trial counsel admitted into evidence at trial. Matthews told detectives that Kirk Zoeller killed Donna Trujillo and attacked him over drugs. Once detectives informed Matthews that Zoeller was dead, Matthews stated that he killed Zoeller in self-defense.
*813 Matthews was indicted for the first-degree premeditated and felony murders of Kirk Zoeller' and Donna Trujillo and for burglary while armed.
During the guilt phase, Justin Wagner, who sold drugs from and was present in Trujillo’s apartment when she and Kirk Zoeller were killed, testified. Wagner explained that Matthews, Zoeller, and Trujillo went into the bedroom of Trujillo’s apartment together. A few minutes later, Wagner said that he heard everyone “freaking out” and screaming and saw Matthews chase Zoeller out of the bedroom with a knife. Wagner testified that Matthews was clearly the aggressor. Before Wagner fled the apartment in fear for his life, he testified that he saw Matthews on top of Zoeller, repeatedly stabbing Zoeller and pulling him back as Zoeller, who was begging for help, tried to flee the apartment. Wagner also testified that he saw Matthews with a big buck knife on the day Zoeller and Trujillo were killed and that they had used Matthews’ knife to cut crack cocaine together earlier that • day. Wagner further testified that, after witnessing Matthews attack Zoeller, he fled to Theresa Teague’s home but hid outside when he heard Matthews arrive. While hiding, Wagner said he saw Matthews remove his shirt and put it in a clear plastic bag outside of Teague’s house.
Theresa Teague also testified to incriminating statements that Matthews made to her on the night Kirk Zoeller and Donna Trujillo were killed. Teague said that, before the police arrived at her home looking for Matthews, she and Matthews went outside after they saw police and helicopter search lights and Matthews said, “That’s for me.” When Teague pressed him for details, she said that Matthews told her that he “ran into a couple of people that probably wish they had not run into him that evening” and that he “just eliminated a couple of problems.” In addition, Teague testified that she had given Matthews a knife about nine to twelve inches long days before Zoeller and Trujillo were killed.
The crime scene investigator testified that he collected the bloody sneakers, bloody jeans, bloody shirt, and Kirk Zoel-ler’s wallet from Theresa Teague’s home and that he found a traffic citation with Matthews’ name on it inside the pocket of the jeans. He also testified that he took pictures of Matthews the day of his arrest and that Matthews did not have any knife cuts or fresh injuries on his body.
Testimony linked the bloody clothes and shoes to Matthews. The DNA analyst testified that “wearer” DNA on the bloody shirt and sneakers matched Matthews’ DNA and that- the blood on the shirt, jeans, and sneakers matched Kirk Zoel-ler’s. She also testified that swabs from four of Matthews’ fingers revealed blood that matched Zoeller’s and that one of the swabs also contained blood that was a possible match to Donna Trujillo’s. The police officer who issued the traffic citation found in the pocket of the bloody jeans identified Matthews as the person to whom he had issued the citation.
The medical examiner testified that Kirk Zoeller had been stabbed to death and that he had 24 stab wounds to the head, neck, chest, and back and two defensive wounds on his forearms. She testified that Zoel-ler’s stab wounds were up to six inches deep and that one wound was inflicted with such force that the tip of the knife broke off in his skull. The medical examiner also testified that Donna Trujillo had been similarly stabbed to death and that she had 11 stab wounds to the head, neck, and chest. The medical examiner testified that, in her experience, it was unusual for stabbing victims to have stab wounds to their heads. She also testified that both victims would *814 have felt pain as they were being stabbed and would have remained conscious for a period of minutes before passing out due to blood loss and then would have remained alive for an additional period of minutes before their deaths.
Matthews testified that he acted in self-defense. He admitted to doing drugs on the day Donna Trujillo and Kirk Zoeller were killed and stated that he went to Trujillo’s apartment with Justin Wagner to trade cocaine for morphine pills. However, Matthews testified that Zoeller and Trujillo wei’e arguing and went into the bedroom together while he stayed in the living area of the apartment’s main room with Wagner. Matthews said it then got quiet and Zoeller came out of the bedroom into the main room of the apartment and started a fight with him over drugs. Matthews denied having a knife and denied that Theresa Teague ever gave him a knife. Matthews testified that Zoeller had the knife and that he took it away from Zoeller while they were fighting. At some point during their fight, Matthews said that he pinned Zoeller against the wall and saw Donna Trujillo’s body on the bed. At that point, Matthews testified that he became afraid for his life because he saw what Kirk Zoeller did to Donna Trujillo. Then, Matthews testified that Zoeller kicked him and he “blacked out,” “snapped,” and started swinging at, but not stabbing, Zoeller. Matthews also claimed that several of the photographs in evidence taken by the crime scene investigator showed injuries he suffered during his fight with Zoeller, including a cut on his abdomen.
In addition, Matthews testified that he dropped the knife inside the front door of Donna Trujillo’s apartment and fled to Theresa Teague’s home, where he washed the blood off of his body in her bathroom. On cross-examination, Matthews acknowledged that he failed to include in his statement to detectives that he was injured during his fight with Kirk Zoeller and that he had “blacked out.” But he denied taking Kirk Zoeller’s wallet and testified that he did not know how his bloody shirt ended up in a bag with Zoeller’s wallet inside Teague’s home. Matthews also admitted to removing his clothes, hiding from police, and telling Teague that the police and helicopter lights were for him. However, he denied that he made the statements to Teague about “run[ning] into a couple of people” and “eliminating] a couple of problems.”
The jury found Matthews guilty of the first-degree premeditated and felony murder of Kirk Zoeller, of the lesser-included offense of manslaughter of Donna Trujillo, and of burglary while armed.
At the penalty phase, the State presented the testimony of several of Zoeller’s friends and family, Matthews’ probation officer, a North Carolina deputy, and the victim of a robbery that Matthews committed in North Carolina. The probation officer testified that, at the time of Zoeller’s murder, Matthews was on felony probation for cocaine possession, and the State introduced the related judgment. The North Carolina deputy testified that Matthews confessed to robbing a convenience store in 1999, and the State introduced the judgment and sentence related to that felony conviction. The victim of an unrelated 2002 robbery testified that Matthews beat and urinated on him in his own home, robbed him, and left him bloody and unconscious on the floor, and the State introduced the judgment and sentence related to that felony conviction.
The defense, during the penalty phase, presented the testimony of several members of Matthews’ family, Matthews’ childhood friend, and two expert witnesses — a psychiatrist and a neuropsychologist. *815 Matthews’ family testified that he is a loving person who had a difficult childhood filled with behavioral and mental health problems for which he received counseling and medication and was sent to camps and a group home. They also testified that Matthews sufféred head injuries from a traumatic birth, from a childhood bicycle accident, and from being beaten with a brick. In addition, Matthews’ brother testified that a stepfather physically abused Matthews.
The psychiatrist testified that Matthews was diagnosed with ADHD, conduct disorder, depression, and dysthymia as a child, for which he was prescribed Prozac and Ritalin. He also testified that Matthews has a family history of mental illness, was exposed to violence as a child, had possible head trauma but did not appear to have severe cognitive defects, and has a history of alcohol and drug abuse, including in the days before and on the night of Kirk Zoel-ler’s murder. The psychiatrist diagnosed Matthews with antisocial personality disorder and said he believed that Matthews also suffers from bipolar disorder but that he could not make that diagnosis because he did not observe Matthews in a manic state. However, the psychiatrist testified that the jail was medicating Matthews with Risperdal and Depakene, which are used to treat bipolar disorder. The psychiatrist testified that he did not disagree that Matthews knew right from wrong'when he committed the murder, and he agreed that Matthews could choose to abide by the law and not to commit murder. The neuropsy-chologist téstified that Matthews has an I.Q. of 104 and, though he has mild attentional issues, Matthews has no major cognitive problems.
The jury recommended the death penalty by a vote of 10-2, and a Spencer[2] hearing was held. At the Spencer hearing, the mother of Matthews’ child testified that Matthews has a loving and positive relationship with their son and asked the court to spare Matthews’ life.
The trial court followed the jury’s recommendation and sentenced Matthews to death, concluding that the aggravating circumstances [3] “far outweigh” the mitigating circumstances.[4] The court also sentenced *816 Matthews to life imprisonment for burglary while armed and to fifteen years for manslaughter, both sentences to be served consecutively with the death sentence.
II. ISSUES RAISED ON APPEAL
Matthews raises constitutional challenges on appeal, all of which he acknowledges that this Court has previously rejected. We reject them here as well.
Two of Matthews’ challenges are based on Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and we need not reach the merits of these claims[5] because the jury convicted Matthews of burglary while armed, thereby establishing the aggravator of committed during the course of a felony. See Baker v. State, 71 So.3d 802, 824 (Fla.2011) (“Ring is not implicated when the trial court has found as an aggravating circumstance that the crime was committed in the course of a felony.”), cert. denied, — U.S. -, 132 S.Ct. 1639, 182 L.Ed.2d 238 (2012). In addition, Matthews’ aggravators of prior violent felony and under sentence of imprisonment (felony probation) preclude Ring’s application. See Hodges v. State, 55 So.3d 515, 540 (Fla.2010) (“This Court has repeatedly held that Ring does not apply to cases where the prior violent felony ... or the under-sentence-of-imprisonment aggravating factor is applicable.”), cert. denied, — U.S. -, 132 S.Ct. 164, 181 L.Ed.2d 77 (2011). Accordingly, we do not reach the merits of Matthews’ Ring claims.
Matthews also challenges the constitutionality of the heinous, atrocious, or cruel (HAC) and in the course of a felony aggra-vators and jury instructions.[6] Because we have consistently upheld the constitutionality of these aggravators and instructions *817 against identical challenges and Matthews provides no reason why we should depart from our precedent, we deny Matthews’ claims. See Ault v. State, 866 So.2d 674, 686 (Fla.2008) (rejecting argument that in the course of a felony aggravator “is unconstitutional because it constitutes an automatic aggravator and does not narrow the class of persons eligible for the death penalty”); Francis v. State, 808 So.2d 110, 134 (Fla.2001) (recognizing the consistency with which we have upheld the constitutionality of the HAC aggravator instruction); Blanco v. State, 706 So.2d 7, 11 (Fla.1997) (explaining that the in the course of a felony aggravator narrows the class of persons eligible for the death penalty because it does not apply to all felony convictions); Merck v. State, 664 So.2d 989, 941, 943 (Fla.1995) (holding HAC instruction is not unconstitutionally vague and overbroad).
III. SUFFICIENCY
“[Tjhis Court has a mandatory obligation to independently review the sufficiency of the evidence in every case in which a sentence of death has been imposed.” Miller v. State, 42 So.3d 204, 227 (Fla.2010), cert. denied, — U.S. -, 131 S.Ct. 935, 178 L.Ed.2d 776 (2011); see also Fla. R.App. P. 9.142(a)(5). To conduct this review, “we view the evidence in the light most favorable to the State to determine whether a rational trier of fact could have found the existence of the elements of the crime beyond a reasonable doubt.” Rodgers v. State, 948 So.2d 655, 674 (Fla.2006).
Here, we conclude thát competent, substantial evidence supports Matthews’ murder conviction. See Davis v. State, 2 So.3d 952, 966-67 (Fla.2008) (“In appeals where the death penalty has been imposed, this Court independently reviews the record to confirm that the jury’s verdict is supported by competent, substantial evidence.”). For example, Justin Wagner testified that he saw Matthews chasing and on top of Kirk Zoeller, repeatedly stabbing him with a knife, and pulling him back as Zoeller tried to flee and begged for help. The medical examiner’s testimony confirmed that Zoeller had been stabbed 24 times and that Zoeller had defensive wounds on his forearms. Moreover, Wagner testified that Matthews was clearly the aggressor and that he saw Matthews with a knife earlier the same day. Theresa Teague further testified that she gave Matthews a knife days before the murder. Teague also testified that Matthews told her on the night of the murder that he had “run into a couple of people that probably wished they had not run into him” and that he had “eliminated a couple of problems.”
Further, DNA testing results linked the bloody shirt and shoes to Matthews and indicated that, the blood on Matthews’ shirt, shoes, and jeans matched Zoeller’s. In addition, the crime scene investigator found ,a traffic citation with Matthews’ name on it inside the pocket of the bloody jeans, and the police officer who issued the citation identified Matthews as the person to whom he issued the citation. Moreover, the DNA analyst testified that swabs from four of Matthews’ fingers taken hours after the murder revealed blood that matched Zoeller’s. Finally, Zoeller’s wallet was found in a bag with Matthews’ bloody shirt inside of Teague’s home.
Based on the totality of the evidence, the jury could have found beyond a reasonable doubt that Zoeller’s murder was premeditated and that his death occurred during the commission of a felony. See Rodgers, 948 So.2d at 674. Accordingly, we conclude that there is sufficient evidence to support Matthews’ conviction for first-degree murder.
*818 IV. PROPORTIONALITY
Regardless of whether a defendant raises proportionality on appeal,[7] this Court reviews the proportionality of each death sentence “to determine whether the crime falls within the category of both the most aggravated and the least mitigated of murders, thereby assuring uniformity in the application of the [death] sentence.” Anderson v. State, 841 So.2d 390, 407-08 (Fla.2003) (citations omitted). In conducting its proportionality review, this Court does not compare the number of aggravating and mitigating circumstances. Crook v. State, 908 So.2d 350, 356 (Fla.2005). Rather, “the Court looks at the totality of the circumstances to determine if death is warranted in comparison to other cases where the sentence of death has been upheld.” Pham v. State, 70 So.3d 485, 500 (Fla.2011), cert. denied, — U.S. -, 132 S.Ct. 1752, 182 L.Ed.2d 541 (2012) (quoting England v. State, 940 So.2d 389, 408 (Fla.2006)). In addition, this Court has recognized that, “[qualitatively, prior violent felony and HAC are among the weightiest aggravators set out in the statutory sentencing scheme.” Hodges, 55 So.3d at 542.
Matthews’ case involves a murder by stabbing for which the jury recommended death by a vote of 10-2. The trial court found four aggravating circumstances beyond a reasonable doubt: (1) especially heinous, atrocious, or cruel (extremely great weight); (2) prior violent felony (great weight);[8] (3) in the course of a burglary/for pecuniary gain (considered as one aggravator and given significant weight); and (4) committed by a person previously convicted of a felony and on felony probation (little weight). The trial court found two statutory mitigating circumstances: (1) extreme mental or emotional disturbance (little weight); and (2) substantially impaired capacity to appreciate criminality of conduct or to conform conduct to requirements of law (little weight). In addition, the trial court found 38 non-statutory mitigating circumstances, such as the defendant had a long history of mental health problems (great weight); the defendant was high on hallucinogenics, cocaine, and pot on the night of the murder (significant weight); the defendant was severely beaten with a brick in 2002 and hospitalized (some weight); and the defendant has the capacity to maintain loving relationships with family members before and during incarceration (slight weight).
Under the totality of the circumstances, Matthews’ death sentence is proportional in relation to other death sentences that this Court has upheld. For example, in Davis, 2 So.3d at 955, we upheld the death penalty in two stabbing murders where the trial court found and gave great weight to the aggravators (prior violent felony, in the course of a felony, HAC, and CCP), while affording slight to some weight to multiple mitigators, including: the defendant had no significant history of prior criminal'activity (little weight); the capital felonies were committed while the defendant was under the influence of extreme mental or emotional disturbance (some weight); the defendant’s age (some weight); the defendant was loved by his friends and family (slight weight); the defendant suffered from ADHD or ADD as a child (little weight); the defendant suffered from congenital, organic brain damage in the frontal lobe (some weight); the *819 defendant suffered from significant cognitive and memory deficits (little weight); the defendant had the support of his family and friends (slight weight); and the defendant suffered physical and emotional abuse as a child (some weight). See also Walker v. State, 957 So.2d 560 (Fla.2007) (death sentence proportionate in drug-related murder where trial court found and gave great weight to HAC, CCP, and in the course of a felony aggravators with several mitigating circumstances, including that the defendant suffered from bipolar disorder and was on drugs the day of the murder (moderate weight)); Duest v. State, 855 So.2d 33 (Fla.2003) (death sentence proportionate in stabbing murder where trial court found aggravators of pri- or violent felony, felony murder merged with pecuniary gain, and HAC and several nonstatutory mitigators, which were afforded very little to great weight, including: physically and emotionally abusive childhood; history of drug and alcohol abuse; defendant was under the influence of drugs or alcohol at time of crime; mutual care and love with friends and family; and defendant was treated unfavorably by others and had troubled childhood); Singleton v. State, 783 So.2d 970 (Fla.2001) (death sentence proportionate for stabbing murder where trial court found prior violent felony and HAC aggravators and statutory mitigators of extreme mental or emotional disturbance, impaired capacity to appreciate criminality of conduct or to conform conduct to requirements of law, and the defendant’s age at the time of the offense); Johnson v. State, 660 So.2d 637 (Fla.1995) (death penalty proportionate for stabbing murder where trial court found prior violent felony, commission of a murder for financial gain, and HAC aggrava-tors and determined that each aggravator, alone, outweighed the mitigators, including: defendant was raised in a single-parent household; defendant had an excellent relationship with other family members; defendant showed love and affection to his children; and defendant had demonstrated artistic talent).
Accordingly, Matthews’ sentence is proportional.
V. CONCLUSION
For the foregoing reasons, we affirm Matthews’ conviction for first-degree murder and his sentence of death.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, CANADY, LABARGA, and PERRY, JJ., concur.

. We have jurisdiction. See art. V, § 3(b)(1), Fla. Const.

. Spencer v. State, 615 So.2d 688 (Fla.1993).

. The trial court found the following aggrava-tors: (1) the capital felony was especially heinous, atrocious, or cruel (extremely great weight); (2) Matthews had been previously convicted of two prior unconnected violent felonies (great weight); (3) Matthews committed the capital felony while he was engaged in the commission of a burglary and Matthews committed the capital felony for pecuniary gain (considered as one aggravator and given significant weight); and (4) Matthews was on felony probation at the time of the -capital felony (little weight).

. The trial court found two statutory miti-gators: (1) the capital felony was committed while Matthews was under the influence of extreme mental or emotional disturbance (little weight); and (2) Matthews’ substantially impaired capacity to appreciate the criminality of his conduct or conform his conduct to the requirements of law (little weight). In addition, the trial court found the following nonstatutory mitigators; (1) long history of mental health problems (great weight); (2) treated for mental health issues from 1994 through 2005 (great weight); (3) suffered a head injury from a bicycle fall (some weight); (4) grew up without a true father figure (slight weight); (5) loved by his mother (slight weight); (6) loved by his brothers and sister (slight weight); (7) capacity to maintain loving relationships with family members before and during incarceration (slight weight); (8) has a young daughter (slight weight); (9) has the capacity to have long lasting relationships with friends (slight weight); (10) exhibited good behavior during trial (slight weight); (11) receivéd a-G.E.D. (slight weight); (12) long history of abusing multiple types of illegal drugs (slight weight); (13) was high on hallucinogenics, cocaine, and pot on the night of the murder (significant weight); (14) has drawn multiple pictures of his niece and daughter (slight weight); (15) was remorseful *816 and apologized in court (slight weight); (16) had a traumatic birth that included a head injury (slight weight); (17) medicated with Ritalin and Prozac as a child (slight weight); (18) physically abused by his step dad as a young child (slight weight); (19) severely beaten with a brick in 2002 and hospitalized (some weight); (20) received a certification of recognition for an art exhibit (slight weight); (21) has a graduation certificate from the South Fork school (slight weight); (22) bullied by others because of a stuttering problem (slight weight); (23) went to counseling starting at age nine (some weight); (24) diagnosed with attention deficit hyperactivity disorder as a child (slight weight); (25) put in a residential group home as a child (some weight); (26) put in a camp program as a child (slight weight); (27) was in R.O.T.C. while in school (slight weight); (28) received a certificate of award from middle school (slight weight); (29) received the Young Citizen Award/Officer Friendly Program (slight weight); (30) received a certificate of completion from the D.A.R.E. program (slight weight); (31) made the honor roll in 1997 twice (slight weight); (32) assisted a friend with finding a lost pet (slight weight); (33) is known as a good hearted person by a long-time friend (slight weight); (34) raised in a single parent home with little adult supervision (slight weight); (35) assisted his brother by stopping someone from hurting his brother (slight weight); (36) witnessed violent behavior in the home while growing up (some weight); (37) has a long history of prior drug abuse (some weight); and (38) is receiving medication for a bipolar disorder (some weight).

. Matthews' Ring challenges are (i) that the death qualification of his jury violated his constitutional rights because the death penalty cannot lawfully be imposed in his case under Ring as the statutory aggravating circumstances authorizing imposition of the death penalty were not alleged in the indictment and determined by the jury beyond a reasonable doubt; and (ii) that Florida's death penalty statute and procedure are unconstitutional under Ring.

. Matthews claims that the HAC aggravator and instruction are unconstitutionally vague and overbroad and applied in an arbitrary manner, and that the in the course of a felony aggravator and instruction automatically expand instead of narrow the class of persons eligible for the death penalty in violation of the constitution.

. Matthews made a belated argument in his reply brief that his death sentence is not proportionate because his crime is not among the most aggravated and least mitigated.

. This finding was based on convictions for two prior, unconnected robberies.