# Supreme Court of Florida

_____

No. SC18-9
_____

**DOUGLAS BLAINE MATTHEWS,**
Appellant,

vs.

**STATE OF FLORIDA,**
Appellee.

December 12, 2019

PER CURIAM.

Douglas Blaine Matthews appeals the denial of the guilt phase claims in his initial postconviction motion filed under Florida Rule of Criminal Procedure 3.851.[1] For the reasons explained below, we affirm the postconviction court's denial of Matthews' guilt phase claims.

## I.  BACKGROUND

Matthews was convicted of the first-degree premeditated and felony murder of Kirk Zoeller, manslaughter of Donna Trujillo, and burglary while armed.

_____

1. We have jurisdiction.  *See* art. V, § 3(b)(1), Fla. Const.

*Matthews v. State*, 124 So. 3d 811, 814 (Fla. 2013). We set forth the following

facts on direct appeal:

> On the evening of February 20, 2008, Daytona Beach Police Department officers responded to a call that a man was outside an apartment building asking for help. When they arrived on the scene, officers discovered Kirk Zoeller sitting in front of an open apartment door, nonresponsive, covered in blood, and gasping for air with blood pulsing from his neck. The officers entered the apartment and found blood covering the floor and walls. While clearing the apartment, officers discovered Donna Trujillo's body on the bed in the bedroom. The officer who found Trujillo testified that she could not see her body from the main room of the apartment, which consisted of an open kitchen and living room, and that she stood in the bedroom doorway for 10 to 15 seconds before noticing the body because most of it was covered with a pillow. Zoeller and Trujillo were pronounced dead at the scene. According to the medical examiner, both victims had been stabbed to death.
>
> Later that evening, acting on a tip, officers went to the home of Theresa Teague. Teague allowed the officers into her home and consented to a search. Inside, officers saw bloody sneakers and jeans in plain view on the floor and found Matthews, dressed only in boxers and socks, hiding under a pile of clothes in the bedroom. Officers obtained and executed a search warrant for Teague's home and found a bloody shirt in a clear plastic bag and Kirk Zoeller's wallet together inside a different bag.
>
> Matthews made a statement to police detectives outside of Teague's house, which Matthews' trial counsel admitted into evidence at trial. Matthews told detectives that Kirk Zoeller killed Donna Trujillo and attacked him over drugs. Once detectives informed Matthews that Zoeller was dead, Matthews stated that he killed Zoeller in self-defense.
>
> Matthews was indicted for the first-degree premeditated and felony murders of Kirk Zoeller and Donna Trujillo and for burglary while armed.
>
> During the guilt phase, Justin Wagner, who sold drugs from and was present in Trujillo's apartment when she and Kirk Zoeller were killed, testified. Wagner explained that Matthews, Zoeller, and Trujillo went into the bedroom of Trujillo's apartment together. A

few minutes later, Wagner said that he heard everyone "freaking out" and screaming and saw Matthews chase Zoeller out of the bedroom with a knife. Wagner testified that Matthews was clearly the aggressor. Before Wagner fled the apartment in fear for his life, he testified that he saw Matthews on top of Zoeller, repeatedly stabbing Zoeller and pulling him back as Zoeller, who was begging for help, tried to flee the apartment. Wagner also testified that he saw Matthews with a big buck knife on the day Zoeller and Trujillo were killed and that they had used Matthews' knife to cut crack cocaine together earlier that day. Wagner further testified that, after witnessing Matthews attack Zoeller, he fled to Theresa Teague's home but hid outside when he heard Matthews arrive. While hiding, Wagner said he saw Matthews remove his shirt and put it in a clear plastic bag outside of Teague's house.

Theresa Teague also testified to incriminating statements that Matthews made to her on the night Kirk Zoeller and Donna Trujillo were killed. Teague said that, before the police arrived at her home looking for Matthews, she and Matthews went outside after they saw police and helicopter search lights and Matthews said, "That's for me." When Teague pressed him for details, she said that Matthews told her that he "ran into a couple of people that probably wish they had not run into him that evening" and that he "just eliminated a couple of problems." In addition, Teague testified that she had given Matthews a knife about nine to twelve inches long days before Zoeller and Trujillo were killed.

The crime scene investigator testified that he collected the bloody sneakers, bloody jeans, bloody shirt, and Kirk Zoeller's wallet from Theresa Teague's home and that he found a traffic citation with Matthews' name on it inside the pocket of the jeans. He also testified that he took pictures of Matthews the day of his arrest and that Matthews did not have any knife cuts or fresh injuries on his body.

Testimony linked the bloody clothes and shoes to Matthews. The DNA analyst testified that "wearer" DNA on the bloody shirt and sneakers matched Matthews' DNA and that the blood on the shirt, jeans, and sneakers matched Kirk Zoeller's. She also testified that swabs from four of Matthews' fingers revealed blood that matched Zoeller's and that one of the swabs also contained blood that was a possible match to Donna Trujillo's. The police officer who issued the traffic citation found in the pocket of the bloody jeans identified Matthews as the person to whom he had issued the citation.

The medical examiner testified that Kirk Zoeller had been stabbed to death and that he had *24 stab wounds to the head, neck, chest, and back and two defensive wounds on his forearms*. She testified that Zoeller's stab wounds were up to six inches deep and that one wound was inflicted with such force that the tip of the knife broke off in his skull. The medical examiner also testified that Donna Trujillo had been similarly stabbed to death and that she had 11 stab wounds to the head, neck, and chest. The medical examiner testified that, in her experience, it was unusual for stabbing victims to have stab wounds to their heads. She also testified that both victims would have felt pain as they were being stabbed and would have remained conscious for a period of minutes before passing out due to blood loss and then would have remained alive for an additional period of minutes before their deaths.

Matthews testified that he acted in self-defense. He admitted to doing drugs on the day Donna Trujillo and Kirk Zoeller were killed and stated that he went to Trujillo's apartment with Justin Wagner to trade cocaine for morphine pills. However, Matthews testified that Zoeller and Trujillo were arguing and went into the bedroom together while he stayed in the living area of the apartment's main room with Wagner. Matthews said it then got quiet and Zoeller came out of the bedroom into the main room of the apartment and started a fight with him over drugs. Matthews denied having a knife and denied that Theresa Teague ever gave him a knife. Matthews testified that Zoeller had the knife and that he took it away from Zoeller while they were fighting. At some point during their fight, Matthews said that he pinned Zoeller against the wall and saw Donna Trujillo's body on the bed. At that point, Matthews testified that he became afraid for his life because he saw what Kirk Zoeller did to Donna Trujillo. Then, Matthews testified that Zoeller kicked him and he "blacked out," "snapped," and started swinging at, but not stabbing, Zoeller. Matthews also claimed that several of the photographs in evidence taken by the crime scene investigator showed injuries he suffered during his fight with Zoeller, including a cut on his abdomen.

In addition, Matthews testified that he dropped the knife inside the front door of Donna Trujillo's apartment and fled to Theresa Teague's home, where he washed the blood off of his body in her bathroom. On cross-examination, Matthews acknowledged that he failed to include in his statement to detectives that he was injured during his fight with Kirk Zoeller and that he had "blacked out." But

> he denied taking Kirk Zoeller's wallet and testified that he did not know how his bloody shirt ended up in a bag with Zoeller's wallet inside Teague's home.  Matthews also admitted to removing his clothes, hiding from police, and telling Teague that the police and helicopter lights were for him.  However, he denied that he made the statements to Teague about "run[ning] into a couple of people" and "eliminat[ing] a couple of problems."

*Id.* at 812-14 (alterations in original) (emphasis added).

"The jury recommended the death penalty by a vote of 10–2, and a *Spencer*[2] hearing was held." *Id.* at 815.  The trial court followed the jury's recommendation. *Id.*  On direct appeal, we affirmed Matthews' conviction for first-degree murder and death sentence.  *Id.* at 812.[3]  Matthews' death sentence became final in 2013. *Matthews v. Florida*, 134 S. Ct. 683 (2013).

Matthews filed an initial motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.851.  Matthews amended his postconviction motion

---

2. *Spencer v. State*, 615 So. 2d 688 (Fla. 1993).

3. Matthews raised the following issues on direct appeal: whether the death qualification of his jury violated his constitutional rights because the death penalty cannot lawfully be imposed in his case under *Ring v. Arizona*, 536 U.S. 584 (2002), as the statutory aggravating circumstances authorizing imposition of the death penalty were not alleged in the indictment and determined by the jury beyond a reasonable doubt; whether Florida's death penalty statute and procedure are unconstitutional under *Ring*; and whether the heinous, atrocious, or cruel (HAC) and in the course of a felony aggravators and jury instructions are constitutional.  *Matthews*, 124 So. 3d at 816.

several times, including once to add a claim pursuant to *Hurst*.[4] After holding two evidentiary hearings on certain claims and summarily denying other claims, the postconviction court granted Matthews a new penalty phase pursuant to *Hurst*, but denied relief as to his guilt phase claims.

## II. ANALYSIS

Matthews now appeals the denial of relief as to his guilt phase claims, arguing that the postconviction court erred in denying nine claims in his initial postconviction motion,[5] including (A) a claim alleging newly discovered evidence, (B) six claims alleging ineffective assistance of counsel, (C) a claim alleging cumulative error, and (D) a claim alleging that he may be incompetent at the time of execution. We address each claim in turn.

### A. Newly Discovered Evidence

Matthews first argues the postconviction court erred when it denied his newly discovered evidence claim relating to fingerprint evidence. Specifically, fingerprint testing was conducted during postconviction, and two latent prints were

_____

4. *Hurst v. Florida*, 136 S. Ct. 616 (2016); *Hurst v. State*, 202 So. 3d 40 (Fla. 2016).

5. In a footnote in its answer brief, the State questions whether this Court has jurisdiction over an appeal of the order granting in part and denying in part postconviction relief because the State did not appeal the granting of a new penalty phase. However, this Court rejected this argument in *Merck v. State*, 260 So. 3d 184, 188 n.1 (Fla. 2018) ("[T]he pending resentencing does not affect our exclusive jurisdiction over this appeal.").

developed from the Post-It note found inside the victim Kirk Zoeller's wallet, and the prints belonged to Justin Wagner, the sole eyewitness to the crime. Matthews argues that this fingerprint evidence impeaches Wagner's trial testimony and undermines that State's theory of the case. However, we affirm the denial of this claim.

To obtain a new trial based on newly discovered evidence, a defendant must meet two requirements. *Jones v. State*, 709 So. 2d 512, 521 (Fla. 1998). First, the evidence "must have been unknown by the trial court, by the party, or by counsel at the time of trial, and it must appear that the defendant or his counsel could not have known [of it] by the use of diligence." *Id.* (alteration in original) (quoting *Torres-Arboleda v. Dugger*, 636 So. 2d 1321, 1324-25 (Fla. 1994)). "Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial." *Id.*

Newly discovered evidence satisfies the second prong of the *Jones* test if it "weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability." *Id.* at 526 (quoting *Jones v. State*, 678 So. 2d 309, 315 (Fla. 1996)). In determining whether the evidence compels a new trial, the postconviction court must "consider all newly discovered evidence which would be admissible" and must "evaluate the 'weight of both the newly discovered

- 7 -

evidence and the evidence which was introduced at the trial.' " *Id.* at 521 (quoting *Jones v. State*, 591 So. 2d 911, 916 (Fla. 1991)). This determination includes

> whether the evidence goes to the merits of the case or whether it constitutes impeachment evidence. The trial court should also determine whether this evidence is cumulative to other evidence in the case. The trial court should further consider the materiality and relevance of the evidence and any inconsistencies in the newly discovered evidence.

*Id.* (citations omitted).

The State does not dispute that the fingerprint evidence is newly discovered evidence within the meaning of the first prong of the *Jones* test. Therefore, the question is whether this evidence satisfies the second prong. Because the fingerprint evidence would probably not produce an acquittal on retrial as it does not weaken the case so as to give rise to reasonable doubt regarding his culpability, the second prong of the *Jones* test is not satisfied.

First, the fingerprint evidence does not undermine the fact that the wallet was never found to be in Wagner's actual or constructive possession at any time. Specifically, "Zoeller's wallet was found in a bag with Matthews' bloody shirt inside of [Theresa] Teague's home." *Matthews*, 124 So. 3d at 817. Second, at the evidentiary hearing, Wagner provided a plausible explanation as to why his fingerprints were on the Post-It note, including that Zoeller handed it to him to write down a phone number or possibly to put drugs on it. Third, when the newly discovered fingerprint evidence is considered cumulatively with all of the evidence

presented at trial, it does not so weaken the State's case against Matthews as to give rise to a reasonable doubt as to his culpability. Specifically, it does not weaken the following evidence presented at trial: (1) Matthews' statement to the police that he killed Zoeller in self-defense; (2) Matthews' statement to Teague that he "ran into a couple of people that probably wish they had not run into him that evening" and that he "just eliminated a couple of problems;" (3) the testimony of Teague that she gave Matthews a knife days before the murder; (4) the testimony of the medical examiner that Zoeller had been *stabbed 24 times* and that Zoeller had defensive wounds on his forearms; (5) the police found Matthews hiding under a pile of clothes in the bedroom of Teague's home; (6) DNA testing results linked the bloody shirt and shoes to Matthews and indicated that the blood on Matthews' shirt, shoes, and jeans matched Zoeller's; and (7) the testimony of the DNA analyst that swabs from four of Matthews' fingers taken hours after the murder revealed blood that matched Zoeller's. *Matthews*, 124 So. 3d at 812-14, 817. Accordingly, it is not probable that the fingerprint evidence would produce an acquittal on retrial. *See Rivera v. State*, 187 So. 3d 822, 841 (Fla. 2015) (concluding that in light of the evidence presented at trial, "the newly discovered DNA evidence is not of such a nature that it would probably produce an acquittal on retrial"); *Preston v. State*, 970 So. 2d 789, 801 (Fla. 2007) (concluding that in light of the evidence of the defendant's guilt presented at trial, "the newly

discovered DNA evidence . . . would probably not produce an acquittal on retrial").

Therefore, we affirm the postconviction court's denial of this claim.

**B.    Ineffective Assistance of Counsel**

Matthews next argues that his trial counsel was ineffective.  Claims of

ineffective assistance of counsel are analyzed in accordance with *Strickland v.*

*Washington*, 466 U.S. 668 (1984).  To be entitled to relief, the defendant must

establish the following two prongs, deficient performance and prejudice:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment.  Second, the defendant must
> show that the deficient performance prejudiced the defense.  This
> requires showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is reliable.  Unless a
> defendant makes both showings, it cannot be said that the conviction
> or death sentence resulted from a breakdown in the adversary process
> that renders the result unreliable.

*Strickland*, 466 U.S. at 687.

To establish the *Strickland* deficiency prong, "the performance inquiry must

be whether counsel's assistance was reasonable considering all the circumstances"

under "prevailing professional norms."  *Id.* at 688.  The defendant "must identify

the acts or omissions of counsel that are alleged not to have been the result of

reasonable professional judgment."  *Id.* at 690.  There is a strong presumption that

counsel's performance was not ineffective.  *See id.*  "A fair assessment of attorney

performance requires that every effort be made to eliminate the distorting effects of

- 10 -

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. The defendant carries the burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

The *Strickland* prejudice prong requires the defendant to show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," where "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

We affirm the postconviction court's denial of Matthews' six ineffective assistance of counsel claims as set forth below.

## 1. Fingerprint Expert

Matthews argues that his trial counsel was ineffective in failing to consult with or hire a fingerprint expert in order to examine physical evidence submitted to the jury and present evidence that corroborated Matthews' version of events at trial. However, we disagree.

First, Matthews failed to demonstrate deficiency. At the evidentiary hearing, trial counsel testified that the blood evidence supported Matthews' proposition, so there was no need to conduct any forensic investigation. Trial counsel also testified that Matthews admitted to killing Kirk Zoeller, so there was not a question

- 11 -

regarding who did it. Trial counsel further testified that based on Matthews admitting to killing Kirk Zoeller in self-defense, there would be no need for a fingerprint expert. Further, trial counsel testified he did not need a fingerprint expert because Matthews never stated that Justin Wagner killed or assisted in killing anyone. Matthews did not establish that trial counsels' strategic reasons to not to hire a fingerprint expert were deficient. *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000) ("[S]trategic decisions do not constitute ineffective assistance of counsel if alternative courses of conduct have been considered and rejected and counsels' decision was reasonable under the norms of professional conduct.").

Second, Matthews failed to demonstrate prejudice. He failed to demonstrate that there is a reasonable probability that the outcome of the trial would have been different but for trial counsel's failure to hire a fingerprint expert. Accordingly, we affirm the postconviction court's denial of the claim.

## 2. Crime Scene Expert and Forensic Expert

Next, Matthews argues that trial counsel was ineffective in failing to conduct a reasonable investigation and failing to hire a crime scene expert and a medical examiner.

An evidentiary hearing must be held on an initial 3.851 motion whenever the movant makes a facially sufficient claim that requires a factual determination. *See*

- 12 -

*Amendments to Fla. Rules of Crim. Pro. 3.851, 3.852, & 3.993*, 772 So. 2d 488, 491 n.2 (Fla. 2000). A court may summarily deny a postconviction claim when the claim is legally insufficient, procedurally barred, or refuted by the record. *See Owen v. State*, 986 So. 2d 534, 543 (Fla. 2008). "A summary or conclusory allegation is insufficient to allow the trial court to examine the specific allegations against the record." *Ragsdale v. State*, 720 So. 2d 203, 207 (Fla. 1998).

First, Matthews' claim is facially insufficient. The record reflects that the postconviction court entered an order regarding Matthews' first amended 3.851 motion finding as follows, "Defendant's claims that trial counsel was ineffective for failing to consult with a crime scene expert and an independent forensic medical examiner were insufficiently pled and are summarily denied without leave to amend." The record also reflects that in a Motion for Rehearing on Order Denying Evidentiary Hearing on Claim IC (ineffective assistance of counsel claim for failure to consult a crime scene expert and forensic examiner), Matthews attached the affidavits of Dr. Daniel Spitz and Barie Goetz setting forth what testimony the experts would have provided at the evidentiary hearing. Therefore, it appears that it was not until after the postconviction court summarily denied the claim that Matthews provided the affidavits. *See Bryant v. State*, 901 So. 2d 810, 821 (Fla. 2005) ("[W]hen a defendant alleges ineffective assistance of counsel for failure to call specific witnesses, a defendant is 'required to allege what testimony

defense counsel could have elicited from witnesses and how defense counsel's failure to call, interview, or present the witnesses who would have testified prejudiced the case.' " (quoting *Nelson v. State*, 875 So. 2d 579, 583 (Fla. 2004))).

Second, this claim is facially insufficient because Matthews' postconviction motion did not allege prejudice. *See Ragsdale*, 720 So. 2d at 207 ("A hearing is warranted on an ineffective assistance of counsel claim only where a defendant alleges specific facts, not conclusively refuted by the record, which demonstrate a deficiency in the performance that prejudiced the defendant."). Matthews did not explain how there was a reasonable probability that the outcome of the trial would have been different.

Further, as to the crime scene photographs and the purported testimony of Barie Goetz regarding the crime scene photographs not showing evidence of a struggle in the bedroom, this testimony would have been cumulative to the photographs themselves and to the testimony of Detective Robert Kay. Specifically, at trial, Detective Kay testified that there was really no blood spatter on the floor and nothing on the walls of the bedroom. Failing to present cumulative evidence—even by mere omission rather than decision—does not constitute ineffective assistance of counsel. *See Beasley v. State*, 18 So. 3d 473, 484 (Fla. 2009) (citing *Darling v. State*, 966 So. 2d 366, 378 (Fla. 2007)).

- 14 -

As to the purported testimony of Goetz regarding whether Matthews could see into the bedroom where Donna Trujillo's body was found from where Matthews struggled with Zoeller before killing him, and as to the purported testimony of Dr. Daniel Spitz, who would have testified that while the wounds might indicate a similar weapon was used on both victims, the wound patterns did not indicate who the perpetrator was and whether the victims were definitively killed by the same person, neither witness's testimony would have done anything to undermine the State's theory or otherwise support Matthews' self-defense claim. This is particularly true in light of Matthews' admission to being Zoeller's killer, combined with testimony of Teague regarding the incriminating statements made by Matthews that he "ran into a couple of people that probably wish they had not run into him that evening" and that he "just eliminated a couple of problems," as well as the testimony of the medical examiner who established that Kirk Zoeller was violently stabbed 24 times, including multiple stabs in the back. *See Matthews*, 124 So. 3d at 813-14.

Moreover, although no evidentiary hearing was granted as to this claim, at the evidentiary hearing, one of Matthews' trial counsel, Michael Nielsen, testified regarding why he did not hire a crime scene expert, stating that he felt it was not needed based on the photographs, DNA, physical evidence, testimony of the witnesses, and Matthews' version of events. We have consistently held that a trial

counsel's decision to not call certain witnesses to testify at trial can be reasonable trial strategy. *See Bowles v. State*, 979 So. 2d 182, 188 (Fla. 2008) (holding that counsel's failure to call clinical psychologist to provide emotional disturbance mitigation was reasonable trial strategy); *Arbelaez v. State*, 898 So. 2d 25, 39 (Fla. 2005) (holding that trial counsel's failure to call defendant's family members as witnesses during penalty phase was reasonable trial strategy and not ineffective assistance of counsel). Further, trial counsel's "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone*, 768 So. 2d at 1048. We have also concluded that trial counsel's strategy of relying on evidence elicited through the cross-examination of the State's witnesses—in lieu of calling additional witnesses—was sound trial strategy. *See id.*; *see also Belcher v. State*, 961 So. 2d 239, 250 (Fla. 2007) (explaining that it is not necessary for defense counsel to retain a defense expert "where defense counsel cross-examined the State's experts to establish the facts necessary for the defense"). Therefore, we affirm the postconviction court's summary denial of this claim.

### 3. Cross-Examination of the State's Witnesses

Matthews further argues that trial counsel was ineffective for failing to cross-examine the State's witnesses, specifically Wagner and Officer Penny Dane.

- 16 -

The postconviction court granted an evidentiary hearing regarding the alleged failure to cross-examine Wagner but summarily denied this claim as to Officer Dane.

As to Justin Wagner, Matthews argues that trial counsel was ineffective for failing to adequately cross-examine Wagner and confront him on his inconsistent statements to the police. However, Matthews has failed to demonstrate deficiency. Both the State and defense trial counsel elicited the fact that Wagner had two shoplifting convictions. Defense trial counsel established during cross-examination that Wagner had done things in the past that he was "not really proud of." The State and defense trial counsel also established that Wagner was a drug dealer and a drug user at the time he witnessed the murder. Also conclusively refuted by the record is Matthews' claim that his trial counsel did not confront Wagner on his inconsistent statements. During cross-examination, Wagner explained to trial defense counsel that he initially lied to the police because he was "scared," "wanted nothing to do with [the situation,]" and was in possession of morphine at the time. The State also confronted Wagner about his inconsistent statements specific to lying to the police, and defense counsel impeached Wagner regarding his prior statement that Zoeller fell in his lap. Further, trial counsel's cross-examination elicited impeachment evidence regarding the fact that Wagner received help from the State Attorney's Office with changing one of his court

- 17 -

dates. Trial counsel cannot be deemed deficient for failing to do what the record demonstrates they did.

Additionally, Matthews did not demonstrate prejudice, as "[n]o prejudice result[s] from counsel's failure to present cumulative evidence of inconsistent statements." *Green v. State*, 975 So. 2d 1090, 1104 (Fla. 2008) (holding that counsel was not ineffective for failing to impeach with one statement because counsel impeached witness with many other inconsistent statements). Any additional impeachment of Wagner would have been cumulative, and failing to present cumulative evidence is not ineffective assistance of counsel. *Valle v. State*, 705 So. 2d 1331, 1334-35 (Fla. 1997); *Provenzano v. Dugger*, 561 So. 2d 541, 545-46 (Fla. 1990). Moreover, Matthews did not establish that, but for trial counsel's failure to more adequately cross-examine Wagner, there is a reasonable probability that the outcome of the trial would have been different.

Second, as to Officer Dane, Matthews argues that trial counsel was ineffective for failing to investigate and properly impeach Officer Dane who testified that, based on her observations, it was impossible for Matthews to have seen the body of Trujillo lying on the bed from where Matthews struggled with Zoeller. Matthews further asserts that a crime scene photograph proves he could have seen Trujillo and that trial counsel was ineffective for failing to use that photograph to cross-examine Officer Dane. However, this claim is facially

insufficient because Matthews' postconviction motion did not allege prejudice. *See Ragsdale*, 720 So. 2d at 207 ("A hearing is warranted on an ineffective assistance of counsel claim only where a defendant alleges specific facts, not conclusively rebutted by the record, which demonstrate a deficiency in the performance that prejudiced the defendant."). Accordingly, we affirm the postconviction court's denial of relief as to both claims.

### 4. Failure to Investigate Matthews' Mental Health and Mental State

Matthews also argues that trial counsel was ineffective for failing to investigate and assess Matthews' mental health and mental state at the time of the crime to further support trial counsel's theory of the case in the guilt phase.

Matthews' postconviction motion failed to allege prejudice; therefore, this claim is facially insufficient. *See Ragsdale*, 720 So. 2d at 207 ("A hearing is warranted on an ineffective assistance of counsel claim only where a defendant alleges specific facts, not conclusively rebutted by the record, which demonstrate a deficiency in the performance that prejudiced the defendant."). Matthews' postconviction motion generally alleged that "[t]rial counsel's failure prejudiced Mr. Matthews by depriving him of evidence that would have created reasonable doubt and corroborated his claims of self-defense." However, Matthews failed to provide any additional facts or support for this conclusory statement. As we have explained, "bare conclusory allegations" are insufficient to establish entitlement to

an evidentiary hearing. *See Johnston v. State*, 70 So. 3d 472, 483 (Fla. 2011) ("Because Johnston presented only bare conclusory allegations on these several issues, he was not entitled to an evidentiary hearing on the claims.").

Moreover, to the extent Matthews is raising an ineffective assistance of counsel claim for trial counsel's failure to raise the defense of diminished capacity during the guilt phase, this claim is without merit. We have repeatedly rejected similar claims. *See Evans v. State*, 946 So. 2d 1, 11 (Fla. 2006) ("[D]efense counsel is not ineffective for failing to present the defense of diminished capacity because diminished capacity is not a viable defense in Florida."); *Hodges v. State*, 885 So. 2d 338, 352 n.8 (Fla. 2004) ("This Court has held on numerous occasions that evidence of an abnormal mental condition not constituting legal insanity is inadmissible to negate specific intent."); *Spencer v. State*, 842 So. 2d 52, 63 (Fla. 2003) (holding that evidence of defendant's dissociative state would not have been admissible during the guilt phase). Accordingly, we affirm the postconviction court's summary denial of this claim.

**5. Juror Bias Regarding Race and Drugs**

Next, Matthews alleges that trial counsel was ineffective for failing to investigate potential jurors' sentiments and biases regarding race and drugs. However, Matthews has failed to demonstrate a basis for relief.

First, with regard to race, the record reflects that trial counsel Nielsen asked the following during voir dire:

> Now, this is a little bit of a hot-button issue, but it's out there, and I'm just going to have to address it. There's no way around it. Okay? And it's the issue of race. All right? My client is – I guess you'd refer as mixed race. His mother is Caucasian and his father is African-American, just like President Obama. All right? Now, the female, Ms. Trujillo, is Caucasian, as well as Mr. Zoeller. And, of course, you know, it's 2010, our president is African-American. And so my question is this: Is there anyone here that would potentially have a problem with the dynamics of the races of the parties that we're talking about? And if you do, you've just kind of got to let me know. So does anyone – is that going to be a concern for anyone? Okay. Anyone here ever been involved in some aspect of their life where race did kind of play an issue one way or the other? Anyone ever have anything like that? Okay. I'm not seeing any yeses. All right. Thank you.

Therefore, the record refutes Matthews' claim that trial counsel failed to inquire as to race, and trial counsel cannot be deemed deficient for failing to do something they did. Moreover, at the evidentiary hearing, trial counsel Nielsen testified, "I just don't think race was involved in this drug transaction. I don't think it had anything to do with it . . . just because you have a, quote, 'Caucasian victim and a mixed race defendant' does not mean that race is involved in the case." Further, Nielsen testified at the evidentiary hearing that he was not aware of anything in this case that made the crime "racially motivated," and his decision not to inquire further was a reasonable, strategic one. *See Occhicone*, 768 So. 2d at 1048 ("[S]trategic decisions do not constitute ineffective assistance of counsel if

- 21 -

alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct.").

Next, with regard to drugs, a valid claim of ineffective assistance of counsel must establish that the juror "was actually biased against the defendant," such that they had a "bias-in-fact that would prevent service as an impartial juror." *Carratelli v. State*, 961 So. 2d 312, 323-24 (Fla. 2007). "[P]rejudice can be shown only where one who was actually biased against the defendant sat as a juror." *Id.* at 324. Matthews fails to identify, in anything other than a conclusory way, any legitimate juror bias that existed against him. Accordingly, we affirm the postconviction court's denial of this claim.

## 6. Failure to Preserve Denial of Cause Challenge

Next, Matthews argues that trial counsel was ineffective for failing to properly preserve for appeal the denial of trial counsel's cause challenge to a juror who expressed ambivalence during voir dire regarding Matthews' right to remain silent, stating, "I think I would be bothered by not hearing from the defendant." When asked whether it could potentially affect her verdict, she responded, "It could. I know it would always be in the back of my mind." However, a valid claim of ineffective assistance of counsel for failure to raise or preserve a for-cause challenge against a juror must establish that the juror "was actually biased against the defendant," such that they had a "bias-in-fact that would prevent service as an

- 22 -

impartial juror." *Carratelli*, 961 So. 2d at 323-24. "[P]rejudice can be shown only where one who was actually biased against the defendant sat as a juror." *Id.* at 324. The record reflects that Matthews testified at trial; therefore, the record refutes any claim that the juror was biased by Matthews exercising the right to remain silent. Therefore, Matthews cannot demonstrate prejudice.

Moreover, as the postconviction court concluded, the record reflects that the juror was sufficiently rehabilitated. Specifically, trial counsel for the State asked the following regarding the juror's feelings on Matthews' right to remain silent, "So you do feel you can separate that from your verdict," and the juror replied, "Yes." The State also asked the juror whether she understood that she could not base her decision on Matthews refusing to testify, and the juror replied, "Uh-huh." Therefore, since the juror was sufficiently rehabilitated, trial counsel cannot be deemed ineffective or deficient for failing to preserve a meritless claim. *See Raleigh v. State*, 932 So. 2d 1054, 1064 (Fla. 2006) ("[D]efense counsel cannot be deemed deficient for failing to make a meritless objection.").

Additionally, Matthews argues that trial counsel was ineffective for failing to peremptorily challenge another juror who maintained that she would hear all the evidence first before she made up her mind regarding the death penalty. The record also reflects that this juror stated that her niece's murder would not affect her ability to serve as a juror. However, Matthews' postconviction motion failed to

identify, in anything other than a conclusory way, any actual juror bias that existed against him regarding this juror. Accordingly, we affirm the postconviction court's summary denial of the claim.

## C. Cumulative Error

Matthews argues cumulative error. As discussed above, we conclude that the alleged individual errors are without merit. "[W]here the individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error also necessarily fails." *Israel v. State*, 985 So. 2d 510, 520 (Fla. 2008) (quoting *Parker v. State*, 904 So. 2d 370, 380 (Fla. 2005)). Thus, we affirm the postconviction court's denial of relief based on cumulative error.

## D. Incompetent at Time of Execution

As his final claim, Matthews claims that his Eighth Amendment right against cruel and unusual punishment will be violated because he may be incompetent at the time of execution. Matthews stipulates that this claim is premature; however, argues that it is necessary to raise it here to preserve the claim for federal review. "We have repeatedly held that this claim may not be asserted until a death warrant has been issued." *Barnes v. State*, 124 So. 3d 904, 918 (Fla. 2013). Therefore, because a death warrant has not been issued in this case, we conclude the claim was properly denied.

## III.   CONCLUSION

For the reasons stated above, we affirm the postconviction court's denial of Matthews' guilt phase claims.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, and MUÑIZ, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

An Appeal from the Circuit Court in and for Volusia County,
     R. Michael Hutcheson, Judge - Case No. 642008CF030969XXXAES

Eric Pinkard, Capital Collateral Regional Counsel, and Julissa R. Fontán, Chelsea R. Shirley, and Kara Ottervanger, Assistant Capital Collateral Regional Counsel, Middle Region, Temple Terrace, Florida,

     for Appellant

Ashley Moody, Attorney General, Tallahassee, Florida, and Donna M. Perry and Lisa-Marie Lerner, Assistant Attorneys General, West Palm Beach, Florida,

     for Appellee